| 68 | 529 |
| f85 | 362 |

FRANCE *v.* STATE.

Opinion delivered December 22, 1900.

LARCENY—FLIGHT AS EVIDENCE OF GUILT.—The flight of an accused person to avoid arrest is evidence of his guilt, but, standing alone, is insufficient to sustain a conviction. (Page 532.)

Appeal from Crawford Circuit Court.

JEPHTHA H. EVANS, Judge.

#### STATEMENT BY THE COURT.

The appellant, L. France, was jointly indicted with Charles Clem and Boley Kuykendall for the crime of grand

larceny. The indictment charged that.they stole 250. pounds of meat belonging to one Oliver. France and the two other defendants lived a short distance from Van Buren, while Oliver lived about eleven miles north of that place. The meat was stolen from Oliver's smoke-house on the night of April 9, 1900. Late in the afternoon of that day these three young men were seen going along a public road which ran in the direction of Cedar creek and along towards Oliver's house. Oliver lived beyond the creek about a mile and a half, and the men were not seen beyond the creek. About a mile or mile and a half before they came to the creek, they passed by the dwelling of Will Prewitt. Prewitt had at his place two gray horses which were owned by one Wiyzer, a brother-in-law of Prewitt, who lived near Van Buren. Prewitt had kept the horses several months, and, although they were often turned out at night, they had shown no disposition to return to the home of their owner at Van Buren. On the morning after the meat was stolen, these horses were gone from Prewitt's place, and on that same morning were found near Van Buren, not far from the home of their owner, and not far from the homes of the defendants. There was grease on the mane and shoulders of the horses.

The defendant, France, and several other witnesses, several of whom were put on the stand by the state, testified that these three men, France, Clem and Kuykendall, had gone that afternoon to Cedar creek, intending to fish and spend the night on the creek. After they got to the creek the clouds threatened rain, and on this account they say that they returned early in the night, reaching home about nine o'clock. They say that they did not go nearer to Oliver's place than the creek, which was a mile and a half away, and no witness saw them nearer. Search was made for the meat, but it was never found, and the only indication or trace of it discovered was the grease on the shoulders of the two horses of Wiyzer.

A day or two after the meat was stolen, these three went to the Indian Territory, which adjoined the county where they lived, and was only a few miles away. They remained there a day and two nights, and then came back home. When

officers attempted to arrest them, they ran, and stayed out one or two nights, and it was several days before they were arrested. Their excuse for endeavoring to evade the officers was that they had learned that warrants were issued for their arrest, and, not being able to make bond, they ran to avoid being put in jail, but intended to surrender soon.

Upon trial France was convicted and sentenced to imprisonment for one year in the penitentiary, and from this judgment he appealed.

*Chew & Fitzhugh*, for appellant.

*Jeff Davis*, attorney general and *Chas. Jacobson*, for appellee.

RIDDICK, J. (after stating the facts.) The main contention on this appeal is that the evidence is not sufficient to sustain the verdict. It is the theory of the prosecution that the accused men stole Oliver's meat, and used the two horses of Wiyzer to bring it down to Van Buren, or near there. The meat was undoubtedly stolen, and we believe that the thieves used the horses of Wiyzer to carry it away, but who those thieves were the evidence does not show. Leaving out the fact that France and the two other suspected men endeavored to evade arrest, there is nothing in the evidence to connect them with the crime charged. The evidence shows that, late in the afternoon before the meat was stolen, they were seen going along a public highway leading towards the place from which the meat was stolen. But they explained this by saying that they were going to Cedar creek to spend the night fishing. The testimony was not contradicted, but was corroborated by several witnesses who testified for the state. These witnesses, though introduced by the state, were relations and friends of defendant, and the jury may not have believed them. But if we disregard the testimony favorable to defendants, we have only the fact that they were seen on a public road a mile and a half from Oliver's on the afternoon or evening before the meat was stolen at night.

The fact that one passes in the afternoon along a public highway by a house where a larceny is committed at night is,

of itself, no evidence that he committed the larceny. But it is said that the circumstance of the horses being found near Van Buren with grease on their shoulders tends to show that the meat was carried to that neighborhood, and that the accused men lived near Van Buren, and by their own confession had been in a mile and a half of Oliver's, and returned to Van Buren on the night the meat was stolen. Assuming that the grease upon the horses came from the meat, the fact that these horses were found near Van Buren, and near the home of their owner, shortly after the theft may be some evidence, though not very strong, that the meat was carried in that direction; for it may have been carried to another neighborhood, and the horses, upon being released, may have, of their own volition, returned to their former home. But if the meat was carried towards Van Buren, this is hardly sufficient to raise a suspicion against the defendants more than against many others, and is really no evidence that they were connected with the crime. Van Buren is a populous town, and numbers of people lived in the neighborhood where the meat was stolen. People were continually going back and forth between the two neighborhoods, but this does not show that any particular one of them took the meat. The circumstances tend to show that the meat was carried down the road after midnight of the night it was stolen, but the defendants and several witnesses for the state say that, although defendants were on Cedar creek about a mile and a half from Oliver's place the day before the larceny, yet they returned home early in the night, about eight or nine o'clock. There is nothing to contradict this testimony, and nothing to connect the defendants with the crime except the fact that they afterwards endeavored to evade arrest. This circumstance, taken in connection with the fact that these parties were in the neighborhood of the crime shortly before the larceny was committed, does raise a suspicion that they were connected with the crime. But is this sufficient to sustain the verdict? "When a suspected person attempts to escape or evade a threatened prosecution," says Wharton, "it may be argued that he does so from a consciousness of guilt; and though this inference is by no means strong enough by itself to warrant a

conviction, yet it may become one of a ' series of circumstances from which guilt may be inferred." Wharton, Crim. Ev. § 750. The court of appeals of New York, speaking of this question, said: "The evidence that the defendant made an effort to keep out of the way of the sheriff was very slight, if any, evidence of guilt. There are so many reasons for such conduct consistent with innocence that it scarcely comes up to the standard of evidence tending to establish guilt, but this and similar evidence has been allowed upon the theory that the jury will give it such weight as it deserves depending upon surrounding circumstances." *Ryan* v. *People*, 79 N. Y. 601. ' This language was quoted with approval by the supreme court of the United States in a recent case where the court reversed the judgment of the district judge, saying of the charge to the jury that "it lays too much stress upon the fact of flight, and allows the jury to infer that this fact alone is sufficient to create a presumption of guilt." *Alberty* v. *United States*, 162 U. S. 511.

There may be cases where the flight of a person to avoid arrest for a crime tends very strongly to show guilt or connection with the crime, and the weight to be given such circumstance is for the jury to determine. But their decision is subject to review by the court on a motion for new trial. Now, the evidence in this case shows, we think, that this defendant and those charged with him did not intend permanently to avoid arrest. They stated that they endeavored to avoid arrest at the time, for the reason that they could not give a bond, and did not wish to lie in jail until they could have a trial, but intended to surrender soon. The fact that they continued to remain in the neighborhood of their homes until arrested, although they could easily have left the state, seems to support this statement. Although this endeavor to avoid arrest was a circumstance against defendant calculated to arouse a suspicion that he was guilty, yet, taken in connection with the explanation given for it, we think it hardly sufficient to justify the conviction, when standing alone without other circumstance to connect defendant with the crime.

The defendant may be guilty. A jury of his county have found that he is, and the circumstances are suspicious. But a

consideration of the evidence has convinced a majority of the judges that it is too slight to support the verdict, and that it would be safer to submit the facts to another jury. We are therefore of the opinion that a new trial should have been granted. Judgment reversed, and cause remanded for a new trial.