## ANDREWS *v.* STATE.

### Opinion delivered October 2, 1911.

1. LARCENY—VARIANCE AS TO OWNERSHIP.—Under Kirby's Digest, section 2233, providing that "where an offense involves the commission [of], or an attempt to commit, an injury to person or property, and is described in other respects with sufficient certainty to identify the act, an erroneous allegation as to the person injured or attempted to be injured is not material," *held,* that an indictment for receiving stolen property belonging to a partnership is sufficient if it correctly names the partnership, though an error is made in giving the initials of one of the partners.

2. SAME—SUFFICIENCY OF EVIDENCE.—Mere suspicion is insufficient to support a conviction of receiving stolen property.

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; reversed.

*Edwin Hiner,* for appellant.

1. An indictment which alleges that the stolen property was the "property of J. R. Stockburger, E. P. Pearson and the estate of C. E. Miller, deceased, a partnership doing business at Winslow under the firm name and style of Stockburger, Miller & Company," is not supported by proof that the partnership was composed of Stockburger, Pearson and A. E. Miller. The variance is fatal. 6 S. W. 200; 225 Ill. 610; 73 Ark. 32.

2. The evidence fails to connect the appellant with any participation in the crime, either by way of receiving the stolen property, or, if she can be held to have received it, of guilty knowledge that it was stolen.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

1. The variance between the allegation as to ownership and the proof, is not fatal, because;

(*a*) Where an indictment describes the offense with sufficient certainty to identify the act, an erroneous allegation as to the ownership of the stolen property is, under the Code, not material. Kirby's Dig. §§ 2233; 2228, 2229, 2241,-2-3; 94 Ark. 327; *Id.* 215; *Id.* 65; 93 Ark. 406; *Id.* 275; 92 Ark. 473; 50 Ark 492; 84 Ark. 477; 63 Ark. 613; 32 Ark. 203:

5 Bush (Ky.) 376; 19 Ia. 299; 18 Ia. 123; 30 Ark. 163; 55 Ark. 244, 246; 84 Ark. 99; 66 Ark. 65; 71 Ark. 349; 34 Ark. 720.

(*b*)   The testimony shows that, while the goods stolen were partnership property, yet they were under the control and in the possession of one of the partners.   It is sufficient to lay the ownership of the stolen property in the person who has the management and possession of the same, although he may have been only a joint owner.   42 Ark. 73;   73 Ark. 32;

2.. Though the evidence is meager, it cannot be said that there is a complete want of legal evidence on which to base the verdict.

McCULLOCH, C. J.   Defendant, Pearl Starr Andrews, appeals from a judgment of conviction under an indictment charging her with the crime of receiving stolen property, being a lot of merchandise described in detail and alleged to be "the property of J. R. Stockburger, E. P. Pearson and the estate of C. E. Miller, deceased, a partnership doing business at Winslow, in said county and State, under the firm name and style of Stockburger, Miller & Company."

The evidence showed that the partnership named in the indictment was composed of J. R. Stockburger, E. P. Pearson and A. E. Miller, instead of the estate of C. E. Miller, as charged in he indictment; and it is urged that the variance between the proof and the allegation of the indictment is fatal.     ·

A section of the statute, which is a part of the Criminal Code, provides that "where an offense involves  the commission [of], or an attempt to commit, an injury to person or property, and is described in other respects with sufficient certainty to identify the act, an erroneous allegation as to the person injured, or attempted to be injured, is not material."   (Kirby's Digest, § 2233.)

This court has repeatedly held, since the enactment of the Code, that correctly naming the injured party in an indictment for larceny and kindred offenses is essential to the identification of the stolen property, and that the above quoted section has no application where the correct name is not given.   *Blankenship* v. *State,* 55 Ark. 244;   *Merritt* v. *State,* 73 Ark. 32.

In the Blankenship case, *supra,* where the indictment was or larceny of property alleged to belong to the two individuals

named, and the proof showed different initials of one of the parties named, Judge BATTLE, speaking for the court, said:

"Assuming that this section is applicable to cases like this, an erroneous allegation as to the ownership of the goods stolen can only be cured by describing the alleged offense in other respects with such certainty as to identify the act. There was no such description of the offense in the indictment in this case, and hence this statute did not relieve the State of the necessity of proving that the goods stolen belonged to" the parties named in the indictment.

Now, in all of the cases on the point heretofore decided by this court the indictment charged ownership by individuals, and there was no other sufficient identification. In the present case, however, there is another description in stating the partnership name, and to that extent the proof conforms to the allegations of the indictment. The only variance is as to the name of one of the partners. If the statute has any application at all to larceny and kindred cases, and if any effect at all is to be given to it in such cases, we must hold that it applies, and that, there being a sufficient identification of the property in stating the partnership name, the statute applies and renders the erroneous allegation as to one of the persons injured immaterial. It is true that ordinarily in cases of this kind the rules of criminal pleadings require that the names of partners be given, but, so far as identification of the property is concerned, it is described by naming the partnership and, by operation of the statute, an error as to the individual names of the partners is immaterial.

The opinion of the court in the Blankenship case, *supra,* fairly indicates, we think, that, if the partnership name of the injured parties had been given, instead of merely mentioning the names of the persons who owned the property, the indictment would have been held to be sufficient. At all events, we have no hesitancy in holding now that by operation of the statute above quoted the variance was not fatal.

It is next insisted that the evidence is not sufficient to sustain the verdict; and after careful consideration of the testimony we are of the opinion that this contention must be sustained, as we are unable to discover any substantial testimony

upon which a verdict of guilty against this defendant can be sustained.

The defendant was at the time of this occurrence, and had for many years been, the keeper of a bawdy house in the city of Fort Smith. She had several children, and it appears from the proof that she was endeavoring to rear them in respectability, and that she kept them away from her at school during the winter months. She had a summer home at Winslow, Arkansas, and sent her children there for the summer, usually spending a portion of the time there herself. Mamie McDonald, a middle-aged inmate of her resort in Fort Smith, usually stayed with the children at Winslow, for the purpose of taking care of them, the defendant making occasional visits there herself. In the early part of the summer of 1910 one Lathe Reed, a cousin of defendant, whom she had not seen since childhood, appeared in Fort Smith, and, he being without employment at the time, defendant asked him to go to Winslow, take his wife with him, and spend the summer there taking care of her place, and told him that she could not afford to pay him a salary, but would give him a home there. He went there as requested, and his wife went with him, and spent about a month. On September 1, 1910, the store of Stockburger, Miller & Company at Winslow was burglarized, and a lot of merchandise therein stolen. The evidence tends to show that the burglary was committed by Lathe Reed. Appellant was at Fort Smith then, as was Mamie McDonald, who had brought the children to that place, and they were sent to Little Rock to school in company with one French, a friend of defendant. On the return of French from Little Rock a few days later, he went to Winslow, having spent a portion of the summer there and on September 10 the defendant went to Winslow, and took one of her trunks to carry some curtains and other things, with her. Mamie McDonald had gone to Winslow a few days prior thereto. The defendant spent the day in Winslow, and returned to Fort Smith that night, being accompanied by Mamie McDonald, who carried a trunk. The defendant paid for hauling the trunk to the station and also paid the railroad fare of Mamie McDonald, who was expected to resume her place as an inmate of the resort in Fort Smith. Some time during the next day a search was made of the house at Winslow and two

suit cases, which were among the articles stolen from the store of Stockburger, Miller & Company, were found, one of them being empty and the other containing a lot of the stolen merchandise. A clerk in the store also went to Fort Smith that day, and procured a search warrant, and in the presence of the officers the trunk of Mamie McDonald which had been carried to defendant's resort was searched, and a lot of the stolen merchandise was found in the trunk. When the keys were called for, they were readily given to the officers, and, on inquiry, the defendant stated to them before the trunk was opened that it contained only Mamie McDonald's clothing. It appears from the testimony of the defendant herself, and of Mamie McDonald, that after the trunk was packed in Winslow, the defendant opened it to see what was in it, explaining in her testimony that Mamie McDonald had a way of taking her things some time to use them, and she wanted to see that none of her things were in the trunk. She found inside the trunk, beneath the tray, the two suit cases, which Mamie McDonald told her belonged to Lathe Reed, and she at once threw them out of the trunk. Afterwards, the stolen goods were emptied from one of the suit cases into the trunk and carried there into Fort Smith. The defendant claims that she did not know that the goods were in the trunk, and had not heard of the burglary except that it was mentioned by some one in the house before they left Winslow that a store in Winslow had been burglarized.

There is nothing in the conduct of the defendant, as it appears to us from the testimony in the record, that throws any suspicion around her, further than the fact that the goods were in the trunk and were carried from her house at the time she left. The State has failed entirely to prove that she knew that the goods had been stolen, or that she knew that they were in the trunk when it left the house *en route* to Fort Smith. The State has failed entirely to prove that the goods ever came into the possession of the defendant. There is, at most, a mere suspicion raised by the testimony that defendant may have known that there were stolen goods in the house and that they were being taken to Fort Smith. Mere suspicion, however, is not proof, and is insufficient to warrant a conviction of receiving stolen property. *France* v. *State*, 68 Ark. 529; *Jones* v. *State*, 85 Ark. 360.

Proof of receiving the goods with knowledge that they had been stolen is the essential element of this offense, and it is not sufficient merely to show that the accused had a guilty knowledge that goods had been stolen and were being carried away, even if it can be said that there 's sufficient testimony in this case to establish such guilty knowledge on the part of this defendant. Defendant gives a perfectly satisfactory and consistent statement of her conduct in connection with the transaction, and we are of the opinion that there is not sufficient proof to justify her conviction.

The judgment is therefore reversed, and the cause remanded for a new trial.