WILKERSON *v.* GERARD.

4-5836

138 S. W. 2d 76

Opinion delivered March 18, 1940.

*J. B. Milham,* for appellant.

*McDaniel & Crow,* for appellee.

BAKER, J. Appellant in this case filed his suit in the Saline circuit court alleging that he was the owner of

twenty-three acres of land; that he fenced the same in September, 1936; that he employed a farmer and had part of it cultivated in 1937, and of this cultivated portion there were about eight acres in corn. It had peas planted in the middles of the corn; that there was a meadow of about three acres, and a half-acre of turnips. He alleged that in the fall of 1937 the defendant unlawfully cut and severed plaintiff's wire fence and turned horses and cattle upon plaintiff's land. He alleged as his second cause of action the fact that the defendant hauled several truck loads of gravel from his lands and appropriated it to his own use; that the gravel was of the value of $25 and that he was damaged by the cutting of the fence in the sum of $10 and damages to his turnips, hay and also to the soil, in the amount of $200.

An answer was duly filed and finally there was a jury trial. A verdict was rendered for the defendant. In the progress of the trial there were several objections and exceptions, all of which were duly brought forward in the motion for a new trial and are presented on appeal.

One of the principal controversies arises out of what is alleged to have been a partition fence. In attempting to fence his property the appellant says that he set posts five or six feet apart and strung two strands of stock wire about his farm. The appellee bought land adjacent to appellant's land and so fenced it that a part of appellant's fence became a division fence between the two farms.

There are sharp disputes between the parties as to what actually occurred in regard to the fences and their maintenance. The appellee testified that sometime in the year 1937, while the crops were growing, a small cow that he owned broke appellant's fence; that he offered to furnish appellant wire to rebuild the fence, but that his offer was declined. He says, however, that he sent one of his hired men with wire to patch and restring or rebuild a part of appellant's fence so as to keep his stock out. A part of the controversy in regard to this division fence is that appellant now insists that since he had built a part of the fence before the appellee inclosed

his land adjacent thereto, that the appellee owed a duty to fence in his stock so that they might not trespass upon the appellant's property. No statute or other authority to this effect has been cited.

It can be of no advantage to any one to set forth with any degree of detail all of the controverted facts in this lawsuit, but since there has been a finding by the jury in favor of the appellee, all conclusions necessary to support that finding will be indulged upon appeal. Appellee and several witnesses testify that in the fall of 1937, many or most of the posts supporting appellant's fence were pushed over, or broken off on account of decay; that the fence was down and that cattle went from appellee's inclosed lands upon the appellant's. The appellant argues most seriously that the testimony of himself, his wife, and several other witnesses, was to the effect that the fence was a good one sufficient for the purposes of turning cattle under ordinary conditions; that except for the conduct of the appellee in cutting the wire and opening the fence the cattle would not have trespassed upon his land and have done the damage complained about. All this is controverted by evidence which seems to us equally convincing and which was, of course, more convincing to the jury than appellant's evidence and that is conclusive upon all such questions of fact.

The same statements may be made in regard to the care of crops left upon the land, the amount and value thereof. These were factual matters as sharply in dispute as were those in regard to the kind and condition of the fence. All these matters were decided against the appellant by a jury who heard all the evidence.

As to the gravel alleged to have been removed from appellant's land by the appellee, there is a different issue. It seems the court probably committed an error in submitting these facts as he did under instruction No. 5. That instruction is as follows:

"You are instructed that if you find from a preponderance of the testimony that the only gravel hauled away by the defendant was from the right-of-way of the

public road, then as to the gravel you will find for the defendant.''

There is little proof about the public road. Indeed, we do not know that there is a public road, except both the appellant and appellee discussed this passageway as the country road. The appellee says that he donated one-half of the road where it was adjacent to appellant's land and that in order that there might be an inclosure, he put his fence on the line so as to leave one-half of this highway for the appellee. Appellee denies that he was so favored and says it was the intention not to favor him, but to leave the road for the public generally. This is not highly material. Where the road went across appellee's land, not adjacent to the appellant's, he built the fence on both sides of the road. There is no evidence in the record that the appellant or appellee deeded or conveyed this right-of-way for the road, nor is there any evidence that the right-of-way was condemned by any proceeding in court.

We now call attention to what is the apparent error in the instruction. If there was a donation or conveyance for highway purposes only, or a condemnation, it is most highly probable that there was merely an easement granted over this land and that the title or fee remained in the owners. It must be said that in such an event this particular tract of land could have been used by the public generally for road purposes, or as an easement, but this grant did not justify entry upon the land for other purposes, such as the removal of gravel or sand therefrom by one not an owner. *Cathey* v. *Arkansas Power & Light Co.*, 193 Ark. 92, 97 S. W. 2d 624.

The above case is conclusive upon the matter under consideration.

After full examination of this matter, however, we have decided that even under such a condition the appellant has not established that there was any error in this regard or if there were error that any prejudice resulted therefrom. There is some proof of the removal of some gravel from appellant's lands, but there was also evidence that the jury might have followed absolv-

ing Mr. Gerard from all blame. The road overseer testifies that he removed gravel from this road right-of-way and he goes further and says that it was open to everybody who went there when they wanted gravel. Of course, that fact did not establish a right in the public to remove the appellant's gravel, but appellant had a right or fee claim to only one-half this right-of-way within the road, if, indeed, he had any claim there. It would certainly be a foolish thing to remand this case for a new trial upon this point and then, upon the new trial, witnesses, who knew of the removal of any gravel by the appellee, when called upon, should testify or explain that all they had removed was from that side of the highway owned by the appellee, or perhaps, no witness might remember from what place gravel was taken. There is certainly no presumption that this gravel was removed from the land of the appellant in the face of the disputed facts presented on the trial of the case and since the appellant has been unable to establish the fact that gravel was removed from his part of highway by appellee, he cannot recover for such gravel as was removed from the highway.

There is argument about a letter that was written by the appellee to the appellant in response to a communication he had received and, although this letter was presented to a jury, it was withdrawn finally by the trial court upon the theory that it was an offer of settlement or compromise, and, therefore, incompetent. We have read the letter and given it due consideration and study and have become convinced that the trial court was not in error in the withdrawal of this communication. The letter was written in response to one that the appellee had received. The appellee upbraids the appellant somewhat on account of the letter he was answering. He calls his attention to the fact that he has tried to help, and regard him as a neighbor and that in spite of his advances appellant had been somewhat spiteful and has assumed an attitude of constant and habitual disagreement. He then calls attention to the fact that appellant had offered to lease to him his pasture land; that although they did not agree, he later decided to turn his cattle into his

own land which he knew was the same thing as turning them into appellant's land on account of the fence being down; that he had expected to credit the appellant's account with the hire of the pasture and called attention to the number of cattle and horses he had had there, and mentioned 50c for each head as the usual price, which amounted to $4.50 and that an allowance for the alleged gravel at 50c would make $5; that if appellant desired to have credit for that amount to please send balance that he was owing and that it would operate as a complete settlement.

The appellant argues, most seriously, that the letter should have been permitted to go to the jury solely as an admission against interest, and not as an offer of settlement and compromise. This certainly would be an ingenuous way of disposing of practically any offer of compromise, and if we are to follow the rule, that branch of the law would be no longer available to litigants who prefer so to settle their controversies, rather than to litigate them.

We have given due consideration to every question of law presented, both on account of instructions requested and denied, or given over objections and exceptions and we find no error.

Affirmed.