LEVEON SMITH *v.* STATE

5235                          411 S. W. 2d 510

Opinion delivered February 6, 1967
[Rehearing denied March 13, 1967]

*W. B. Howard* and *Jack Segars,* for appellant.

*Bruce Bennett,* Attorney General; *Richard B. Adkisson,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. This appeal is from a judgment of the Craighead County Circuit Court revoking the suspension of a penitentiary sentence previously imposed on the appellant.

On January 27, 1964, the appellant, Leveon Smith, was properly tried and found guilty by a jury in the

Craighead County Circuit Court on two separate charges of burglary and grand larceny. The trial court postponed the pronouncement of final sentence upon condition of appellant's good behavior in the future, and entered judgment, in the form of suspended sentences to the Arkansas penitentiary for a period of five years under authority of Ark. Stat. Ann. § 43-2324 (Repl. 1964).

On the 11th day of April, 1966, the prosecuting attorney filed information against the appellant on two counts of burglary and grand larceny and on one count of petit larceny, and also filed a petition for revocation of the suspension of sentences in the previous cases, alleging that appellant had violated the conditions of the suspension of sentence in that he had not been of good behavior, but had committed several acts of burglary and grand larceny since the rendition of the original judgments.

Apparently in anticipation of evidence the State might attempt to offer at the trial of appellant on the three new charges, as well as in support of its petition to revoke the suspension of sentences on the previous judgments, the appellant filed motions to quash and suppress a confession purportedly made by the appellant and meticulously set out and included in his motion, each and every item of testimony, as well as exhibits, he anticipated the State would offer as evidence at the trial on the informations, as well as at the hearing on its petitions for revocation.

When the appellant's case came on for jury trial on the three counts charged in the information, appellant's counsel insisted that appellant's motions be first disposed of. The jury was discharged and appellant's motions to suppress and the State's petition for revocation were taken up by the Court in Chambers under the following procedure as revealed by the record:

"MR. PEARSON: If the Court please, I am not sure what would be proper procedure in disposing

of those motions. Mr. Howard suggested they be disposed of at this time before getting into the hearing on the revocation. It might require some duplication of evidence from witnesses. We might do that or wait until the evidence is offered or confession is offered and then take those up.

MR. HOWARD: If your honor please, while the motions are separate and nearly each one states a separate theory, taken together they challenge all the evidence by way of physical evidence we anticipate will be offered by the State in these petitions for revocation, and taken together they challenge the confession we anticipate the State will attempt to offer.

To save time we think the two petitions should be consolidated and we should proceed on the motions, because if the motions are granted, there will be no need. If they are not, so far as an duplication of evidence, I don't believe it would be necessary to duplicate it. I think we could stipulate it would be the same. I don't know of any intelligent way you can pass on these motions and the admissibility of evidence other than to take them up and dispose of them.

COURT: We will proceed with the motions as has been suggested.

MR. HOWARD: All witnesses subpoenaed by the defendant stand up and raise your right hand.''

Appellant's attorney then proceeded to elicit from prospective State's witnesses the evidence in detail he was seeking to suppress.

During two days testimony from police officers, numerous articles were identified as those missing from business places, residents, and offices that had been broken and entered in Jonesboro, and it was definitely

established by witnesses on direct examination by appellant's attorney before the judge of the circuit court that some of these articles had been pawned by the appellant and others found in and recovered from appellant's automobile and his home. After appellant's attorney had introduced into the record appellant's detailed written confession that he had broken and entered all the places reported burglarized and had taken the objects identified and had destroyed and disposed of others, it was stipulated between the appellant's attorney and the prosecuting attorney that if appellant's motion to suppress the evidence should be overruled by the court, then the evidence introduced in support of the motions could be treated as if the State had introduced exactly the same evidence on its petition to revoke the suspension of sentence.

The fact that the burglaries and grand larcenies had been committed by appellant and that appellant freely admitted that he had committed them, does not seem to be seriously questioned in this case. The *competency of the evidence* for the purpose of the *State's petition to revoke* is what is questioned by appellant in this case, and that brings us to the crux of appellant's contention on his motions to suppress.

Appellant, in effect, says that if he had not been unlawfully arrested, neither the police officers, nor the court, nor anyone else would ever have known that it was he who had burglarized the houses, business places, and offices in Jonesboro, and that the court would never have known about money and goods he had stolen, pawned, hid in his home and carried in his automobile and on his person, and would never have known about his bad conduct in general if he had not confessed to the crimes, and if he had not directed the officers to where he had hidden the stolen goods and objects while under the unlawful arrest.

Appellant says that his constitutional rights were violated in the manner of his arrest and that the meat

cleaver or corn knife he carried in his hip pocket, the stolen pipe lighter he carried on his person, the stolen gun case and jewelry he carried in his automobile, the stolen radio he had in his home, the stolen shotgun he had pawned at a grocery store for ten dollars, as well as his voluntary confession that it was he who had committed the numerous burglaries where these objects were obtained were simply "fruits of a poison tree" as announced by the United States Supreme Court in the California case of *Wong Sun* v. *United States*, 371 U. S. 471, 83 S. Ct. 407, and that this evidence was incompetent and totally inadmissible as evidence of his *bad behavior*, on a petition to revoke the suspension of the final pronouncement of sentence on his previous guilty of felony judgment, bearing no taint.

There is a great deal of difference between the Wong Sun case and the case at bar, but we will not prolong this opinion by distinguishing the two except to point out, that the defendants in the *Wong Sun* case were not under a suspended sentence and brought into court on a motion to revoke a suspended sentence under the laws of Arkansas.

Appellant's apprehension came about in this manner—about 11:00 one night officer Gammill of the Jonesboro police department received a complaint from a Mrs. Taylor that there was a prowler in her house at 330 Carson Street. Officer Gammill drove to the address in a squad car, found no one in the house but proceeded to drive around in the neighborhood. Sometime within fifteen minutes after his investigation at the house, and while still cruising around in the neighborhood near Mrs. Taylor's house, officer Gammill saw the appellant in the street running south away from the direction of the Taylor house and about a block or a block and a half from the house. Officer Gammill overtook the appellant and after "conversing with him" told the appellant he was under arrest for investigation of burglary. He searched the appellant by "brushing him down" and found a meat cleaver or corn knife, with a blade ten inches long, in appellant's hip pocket. He took

appellant to the police station where appellant admitted numerous burglaries and thefts which resulted in the recovery of the stolen goods identified as those missing in recent burglaries, and resulted in the revocation of the suspension of the final judgment of conviction on the former felonies as above set out.

The suspension of pronouncement of sentence upon convictions rests in the sound discretion of the trial courts in this State. Ark. Stat. Ann. § 43-2324 (Repl. 1964), *Suit* v. *State*, 212 Ark. 584, 207 S. W. 2d 315, and the sufficiency of evidence for the revocation of such suspension also lies within the sound discretion of the trial court, *Spears* v. *State*, 194 Ark. 836, 109 S. W. 2d 926.

A so-called "suspended sentence" or "suspension of sentence" is in the nature of a *privilege* extended to a defendant upon *condition* and is awarded or withheld in the court's sound discretion as to the worthiness and possibility of rehabilitation of the defendant and on conditions fixed by the court. A revocation of a suspension is in the nature of a *revocation of a privilege* previously extended, and the sufficiency of evidence as to whether or not the conditions upon which the suspension was granted have or have not been met or complied with by the defendant, also lies within the sound discretion of the trial court.

During the period of suspension of a penitentiary sentence on good behavior, the choice is simply left up to the defendant as to whether he serves out his sentence in good behavior or in the penitentiary.

Appellant argues three points for reversal, which we now take up in order.

Point 1: "Appellant was entitled to a trial on the petition for revocation under the same evidentiary rules and constitutional guarantees that would obtain in a trial on the merits of guilt or innocence in any criminal case."

Appellant cites *Gerard* v. *State,* 235 Ark. 1015, 363 S. W. 2d 916 in support of point No. 1.

In the Gerard case, the trial court revoked the suspended sentence in a *summary* proceeding and *denied the defendant the right to testify.*

In the case at bar, appellant's own attorney elicited all the damaging evidence against the defendant in support of his motions to suppress it and the defendant did not offer to testify.

Officer Gammill testified that appellant was carrying a knife with a ten inch blade and when asked what explanation the appellant gave for carrying the knife, the officer stated:

"He said his girl friend was in Marked Tree with another boy and he was waiting for him on Carson street, going to wait on Matthews and Carson, that was the route they would come."

Appellant did not deny carrying the knife or making the statement nor did he offer to do so. He simply argues that officer Gammill told him he was under arrest before the knife was found in his hip pocket, and that the court could not consider this as bad behavior since his constitutional rights were violated in his arrest by officer Gammill.

Ark. Stat. Ann. § 43-2331 (Supp. 1965) is the last pronouncement from the legislature on suspension of sentences and probation in Arkansas, and our own latest pronouncements on the subject are found in our decisions in *Frankie Kinard* v. *City of Conway,* 241 Ark. 255, and *Burt* v. *State,* 241 Ark. 798 where we held, as we now hold again, that the sufficiency of the evidence to sustain an order of revocation of a suspended sentence is a matter addressing itself to the sound discretion of the trial court.

Certainly the same quality or degree of evidence should not be required in the exercise of judicial dis-

cretion as is required for the proof of guilt beyond a reasonable doubt against presumption of innocence and we find no abuse of the Court's discretion in this case.

> Point 2: "The appellant's arrest was illegal and in violation of his rights under the 4th amendment to the constitution of the United States of America."

Appellant argues that his arrest was illegal because it was without reasonable or probable cause as required by amendment 4 of the United States constitution and without reasonable grounds for believing that he had committed a felony as required by Ark. Stat. Ann. § 43-403 (Repl. 1964). This section of the Arkansas statutes is short and reads as follows:

> "A peace officer may make arrest:

> First. In obedience to a warrant of arrest delivered to him.

> Second. Without a warrant, where a public offense is committed in his presence, or where he has reasonable grounds for believing that the person arrested has committed a felony."

In the examination of the arresting officer a fine line of distinction is drawn between "burglary" which is a felony and "house prowling" in trespass, which is a misdemeanor.

In determining what is "reasonable" and what is "probable" in an effort to determine what constitutes "reasonable or probable cause," under amendment 4 of the U. S. constitution, and what constitutes "reasonable grounds for believing," under the State statutes, one must of necessity, depend to some extent, on time, place and circumstances.

There is no question but that the Jonesboro police were well aware of numerous unsolved burglaries in the

City, when officer Gammill was advised by Mrs. Taylor at 11:00 p.m. that a prowler was in her house. Officer Gammill was not unreasonable in believing Mrs. Taylor when she said there was a prowler in her home, and certainly officer Gammill would not have been reasonable in believing that the prowler was paying a social call or merely inspecting the contents of the house out of curiosity. It was not unreasonable for officer Gammill to believe that such prowler had entered the house with intent to commit a felony or larceny. Officer Gammill would have come nearer being unreasonable to have believed otherwise, and he was not duty bound to determine the exact nature or degree of the prowler's intent before making up his own mind.

When a few minutes after the house entry was reported, officer Gammill observed the appellant, a grown man, running down the street away from the house that had been entered at 11:00 at night, he was not unreasonable in believing that the appellant was the one who had entered the house.

Applying the fine technicalities of the law *in favor* of the arrest, that appellant would have us apply *against it*, officer Gammill had a right to actually arrest the appellant because of a public offense being committed in the officer's presence.

No ordinance is cited on walking or running down the streets of Jonesboro near midnight, but Ark. Stat. Ann. § 41-4521 (Repl. 1964) provides as follows:

"A person who carries a knife as a weapon, except when upon a journey or upon his own premises, shall be punished as provided by Act 96 * * *"

and Ark. Stat. Ann. § 41-4523 (Repl. 1964) provides as follows:

"If a person carries a knife with a blade three and a half inches (3½ in.) long or longer, this fact shall

be *prima facie* proof that the knife is carried as a weapon.''

In this case the appellant was not only carrying a knife in the presence of the officer, he was running with it. The blade of the knife was not less than three and a half inches long, it was ten inches long.

Having reached the conclusion that appellant's arrest was legal, under all the attending circumstances of this case, and having reaffirmed our previous holdings that the sufficiency of the evidence for the revocation of suspended sentences is addressed to the sound discretions of the trial court, and finding no abuse of that discretion in the case before us, we find it unnecessary to discuss appellant's point No. 3.

The judgment of the trial court is affirmed.

FOGLEMAN, J. not participating.