LOUIS RAY JONES v. THE STATE OF ARKANSAS

5-5377                                          441 S.W. 2d 458

Opinion Delivered May 26, 1969

1058

*Harkness, Friedman & Kusin* for appellant.

*Joe Purcell,* Atty. Gen. and *Don Langston,* Ass't. Atty. Gen. for appellee.

JOHN A. FOGLEMAN, Justice.    Appellant was convicted of burglary and grand larceny.    He lists 15 points for reversal.    His failure to argue some of them, except by repeating the statement of the points themselves is evidence that these are merely formal in nature. Others are overlapping and intertwined.    We shall treat as many of these points in this opinion as seem to merit discussion, some of which we consider only in view of the reversal of this case for insufficiency of the evidence. Others we consider to be wholly without merit.    In dealing with those of which there is some indication of merit, we will consolidate into the following:

1.  The evidence is insufficient to support the verdict of the jury.

2.  Appellant was never taken before an examining magistrate.

3.  The conviction should be set aside because appellant's arrest was not based upon a warrant or probable cause.

4.  Evidence obtained by search of a barn wherein a large quantity of paint was stored should have been suppressed.

5.  A cardboard box found by an officer prior to the arrest of appellant should have been suppressed as evidence.

6.  Appellant was deprived of constitutional rights by failure of the officers to advise him of his right to counsel, to permit him to use a telephone for at least 30 hours, to permit him to communicate with his parents or relatives, and by interrogation of appellant in the absence of any attorney.

7.  The court erred in giving an instruction distinguishing between direct and circumstantial evidence.

8. The court erred in instructing the jury as to a rule of evidence in regard to possession of stolen property.

We treat these points in the order listed.

## 1.

We find reversible error in the denial of appellant's motion for new trial on this ground.

The Sherwin-Williams Paint Store on State Line Road in Texarkana, Arkansas, was burglarized during the weekend of May 27, 28 and 29, 1967. Paint, brushes and other articles worth more than $5,000 were taken from the store. Among the articles taken were various cloths, a sander, a safe containing papers and records, and various accessories. The burglary was discovered by Sid Smith, the manager of the store, at 7:00 a.m., Monday, May 29. The store had apparently been entered through a window which had been broken and unlocked. Smith immediately notified the Texarkana Police Department. Chief Max Tackett directed the investigation. He learned that a yellow panel-body truck belonging to the paint store had been found at the store on Monday morning with its motor running. He also had information that a truck belonging to the Texarkana School District had been stolen during the same weekend. Assistant Chief Thurman Quisenberry examined the school truck. It was a 1½-ton or 2-ton flat bed truck. The floor of the truck bed consisting of 1'' x 4'' wooden slats was heavily scratched and scarred. The truck was light green, but the bed was black. It had dual wheels and oak sideboards. It had been found abandoned on the side of a road near Fulton. Clay mud was found underneath the truck, and sprigs of wild oats were caught in the springs underneath the truck. On and about the bed of the truck Chief Quisenberry found limbs and thorns from bois d'arc trees, cedar limbs and foliage and leaves appearing to be from wild hedge. Freshly

sprayed black paint appeared along the edges of the floor slats. Lettering on the truck doors had been obliterated by paint of the same color, but of a different type. In the truck the officer found a claw hammer and a small can of green spray paint of the same brand carried in the stock of the paint store. Both Tackett and Quisenberry examined the truck at the paint store and found foliage, some of which was on the rearview mirror, sililar to that found on the school truck. Quisenberry noticed scratches up and down both sides of the paint store truck. Chief Tackett ascertained that plants bearing these types of foliage were indigenous to the vicinity of Brownstown, a small community in Sevier County. He proceeded to that area with Quisenberry and Officer John Butler. Butler was taken because he had previously made his home in Sevier County about six or seven miles from Brownstown. They went near a place known to Butler as the Hogue place. After going some 200 yards from the highway and through a wire gap, they noticed the tracks of a dual-wheeled truck. They drove about 300 yards down through woods to a creek. They walked across the creek and followed these tracks into a thicket of bois d'arc bushes. They then drove back to a welding shop and learned that a new house had been built north of the house that Butler remembered.

The next day Tackett, Butler, Quisenberry and Officer Weir returned to the area. As they came into the area they saw a house on the Hogue place 10 to 12 feet square with a garage to the right, a tool shed to the left rear and a combination chicken house and barn just beyond the tool shed. The barn was 60 to 70 yards from the road and the tool shed 10 to 20 yards from it. The house was 30 to 40 yards from the road. They recognized a 1960 model Chevrolet automobile parked in the road in front of the house as one used by both Louis Ray Jones and his mother, a resident of Texarkana. Jimmy Hogue, the owner of the place was Louis Ray Jones' grandfather. A man named Carl Ray was in charge of the place.

Butler went up to Snead's grocery, while the other officers proceeded along the road about a half mile, passing through the wire gap. Weir remained with the car while Tackett and Quisenberry walked farther. After they crossed a creek, Tackett found a piece of pasteboard which bore stencilled marks pertaining to Sherwin-Williams at Texarkana. Following dual wheel tracks, they saw skinned places on the brush bearing bluish green paint marks approximately the same color as the paint on the school truck. After the officers had unsuccessfully searched the area for the safe and other missing articles, they returned to the area of the small house they had seen, leaving the police car 50 or 60 steps from the place the cardboard was found and about 60 to 70 steps from the place the dual wheel tracks led into brush consisting largely of bois d'arc in a place where some wild oats also grew. They had been rejoined by Butler who reported information he had received at the store. The officers walked around behind the garage, where they found dual wheel tracks, appearing to be fresh, leading to the barn on the side most remote from the highway. Looking through a wire enclosure they saw that the barn contained stacks of hay. It appeared to Butler that the barn door had been recently opened. Weir and Butler looked through a crack and saw a two-wheeled dolly.

Quisenberry took up a station in some woods 50 or 60 yards from the road in a position where he could watch the house, barn and other buildings, while Tackett, Butler and Weir proceeded to the Snead store. From there, Chief Tackett called the sheriff's office at De-Queen for a search warrant. He left Weir at the store to await the arrival of a Sevier County officer, and he and Butler returned to the area where the cardboard had been found and searched for the safe and paint for more than an hour. During this time Quisenberry saw Louis Ray Jones, Jo Ann Womack and Wayne Jones arrive in a Volkswagen, which they parked in front of the Chevrolet. After they raised the hood on the Chevrolet, Louis Ray and Jo Ann Womack came around behind the

garage and mounted a tractor located between the garage and the house. They backed the tractor into the road and proceeded in the direction in which Tackett and Butler had gone. Butler and Tackett heard the motor of the tractor and could tell that it was approaching them. When Butler got back to the police car, he saw a set of tractor tracks indicating that a tractor had been turned around near the car. Weir had seen the party arrive and called Chief Tackett on a "walkie-talkie" radio and advised him of the party's arrival. Tackett instructed Weir not to let these people leave, but not to make any arrests before the Sevier County officer arrived, if he could avoid doing so. Shortly thereafter Deputy Sheriff Young arrived, and he and Weir went to the house. About 10 or 15 minutes after they arrived, Louis Ray Jones and Miss Womack returned, and were placed under arrest by these officers. The arrest was made about 20 or 30 feet from the shed or garage at or near the edge of the road. Chief Tackett and Butler arrived shortly thereafter and found Louis Ray Jones and Jo Ann Womack under arrest and in a car. Young had a search warrant which was declared invalid by the trial court. The officers immediately commenced a search of the barn and garage in the vicinity. In the barn they found most of the stolen articles which were later returned to the Sherwin-Williams Paint Store. They did not find the safe. They also found a large number of empty fertilizer sacks in the barn and fertilizer in clear plastic bags in the garage. The bags were colored red in part. Some of the bags in the garage were also empty. The two-wheeled dolly was recovered from the garage.

T. D. Snead ran the store about a quarter of a mile away from the place where Jones was arrested. Late in the evening on the day before the police came up he saw a large truck with sideboards pull out from the barn. It went south toward the cliff, a point beyond the Hogue house near the river and south of Brownstown. .

On the following day Tackett, Quisenberry, Weir and Butler returned to the area with Willis B. Smith, Jr., and went along the road beyond the Hogue place, searching for the safe. They found and recovered a plastic bag of the type found at the barn and garage containing Sherwin-Williams papers and records. They found dual wheel tracks indicating that a truck had backed up to Little River where they found 12 or 15 more of the same type bags. Two of these found in the river also contained records and papers belonging to Sherwin-Williams Paint Company at 800 State Line Road. The papers were identified by the manager of Sherwin-Williams Paint Company.

This evidence was entirely circumstantial. We find it insufficient to support the jury verdict. Where circumstantial evidence alone is relied upon to establish guilt of one charged with a crime, such evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Logi* v. *State,* 153 Ark. 317, 240 S.W. 400; *Turner* v. *State,* 192 Ark. 937, 96 S.W. 2d 455; *O'Neal* v. *State,* 179 Ark. 1153, 15 S.W. 2d 976. A conviction resting upon evidence which fails to come up to the standard prescribed is contrary to law, and it is the duty of the court to set it aside. Where all the circumstantial evidence leaves the jury to conjecture only in determining the guilt of one accused, it fails to meet this standard. *Logi* v. *State,* supra.

The conviction here is based upon evidence lacking important elements shown in cases where we have found circumstantial evidence sufficient. In this case there was no evidence indicating that appellant was ever actually in possession of any part of the stolen property as there was in *Meadows* v. *State,* 128 Ark. 639, 193 S.W. 264; or that he was ever present at or near the paint store as was shown in *Nick* v. *State,* 144 Ark. 641, 215 S.W. 899; or that he had actually been present at the place or in the vicinity where the stolen property was found prior to the time when seen by the officers; or that he was ever

in the vehicle tracked to the area where the paint was found as was shown in *Nick* v. *State,* supra. Under this state of the record, the circumstances could be just as consistant with the guilt of Jimmy Hogue, Carl Ray, Wayne Jones, Jo Ann Womack (now Jones), or any one of innumerable people who might have had access to the Hogue place and the garge and barn there. There was no evidence whatever as to who might have lived on or frequented the premises. It was not shown that appellant lived on or had occasion to stay on the premises as was indicated in *Nick* v. *State,* supra, and *O'Neal* v. *State,* 179 Ark. 1153, 15 S.W. 2d 976. The evidence in this case is no stronger than was the circumstantial evidence of grand larceny in *France* v. *State,* 68 Ark. 529, 60 S.W. 236, where we said that the defendant might be guilty, that the circumstances were suspicious but the evidence was too slight to support the verdict and a new trial should have been granted.

## 2.

We have repeatedly said that the provisions of Ark. Stat. Ann. § 43-601 (Repl. 1964) are directory, not mandatory. There can be no reversible error solely because of a failure to take one lawfully arrested before a magistrate for preliminary examination. *Moore* v. *State,* 229 Ark. 335, 315 S.W. 2d 907; *Paschal* v. *State,* 243 Ark. 329, 420 S.W. 2d 73.

## 3.

We find ample evidence to justify the arrest of appellant in this case. His actions and conduct after the officers had arrived at the Hogue place were sufficient to give them reasonable grounds for believing that he had committed a felony. He stopped immediately at an apparently disabled car he had been known to drive at a place where the officers had reason to believe fruits of the crime were stored. He displayed a great familiarity with the premises and the surrounding area where in-

criminating evidence had already been found. He commenced an immediate reconnaisance of the area. His tractor ride with his girl friend commenced in an area near the garage and barn. It took them toward the area where the truck tracks, the cardboard and other incriminating evidence had been observed but was reversed abruptly when the police car came into his sight. Under Ark. Stat. Ann. § 43-403 (Repl. 1964) an officer has the right to make an arrest when he has reasonable grounds for believing that the person arrested has committed a felony. Appellant argues that even if the other officers did have reasonable grounds for making the arrest, Deputy Sheriff Young did not. Obviously, knowledge and information gained by the officers were interchanged among them. Chief Tackett, while approaching the place of arrest, directed by radio that it be made. Butler had previously conveyed to Tackett the information given him by Snead. Young testified on the hearing on a motion to suppress evidence that Weir stated that the Texarkana officers had reason to believe that the stolen paint was in the area or buildings, that Louis Ray Jones had been seen hauling feed or hay in the area,' and that Jones and the girl had ridden away from the area on a tractor. He stated that the only ground for him to suspect the parties was the statement the officer, Weir, had given him. Probable cause is to be evaluated by the courts on the basis of the collective information of the police (which may consist partially of hearsay) rather than that of only the officer who performs the act of arresting. *Smith* v. *United States,* 358 F. 2d 835 (D.C. 1966), *cert. denied,* 386 U.S. 1008. See also *State* v. *Fioravanti,* 46 N.J. 109, 215 A. 2d 16 (1965); *United States* v. *Ventresca,* 380 U.S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684. Information coming to officers must rise above mere suspicion of criminal activity in order to constitute probable cause for an arrest, but it need not be tantamount to that degree of proof sufficient to sustain a

---

'No evidence to support this statement was offered in the actual trial.

conviction. *Clay* v. *United States,* 394 F. 2d 281 (8th Cir. 1968), *cert. denied,* 393 U.S. 926; *Reed* v. *United States,* 401 F. 2d 756 (8th Cir. 1968). See also *Smith* v. *State,* 241 Ark. 958, 411 S.W. 2d 510.

4.

The trial judge conducted an extensive hearing on appellant's motion to suppress this evidence. The evidence heard was virtually identical with that later adduced during the trial. The trial judge found from the evidence that appellant had no standing to complain and that the search was incident to and contemporaneous with a lawful arrest. We find substantial evidence to support his findings that the search was incidental to and contemporaneous with a lawful arrest, even if appellant did have standing to complain.

In applying Fourth Amendment sanctions, it must always be remembered that only unreasonable searches are condemned. *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1924). Reasonableness of a search must be tested under the particular circumstances of the case rather than by comparison with particular searches which have been approved by the United States Supreme Court in specific cases. That court has deliberately avoided the establishment of any formula or measure by which the validity of a search should be determined. In *United States* v. *Rabinowitz,* 339 U.S. 56, 70 S. Ct. 430, 94 L. Ed. 653 (1959) that court said:

"What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case."

If comparisons with specific cases are to be made, it is better to make them with cases wherein searches have

been disapproved as unreasonable. We find no decision of the United States Supreme Court wherein a search such as this has been held unreasonable.

The only limitation which has been placed upon a search incidental to an arrest is that it not be remote in time and place. See *Agnello* v. *United States,* 269 U.S. 20, 46 S. Ct. 4, 70 L. Ed. 145; *Preston* v. *United States,* 376 U.S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777 (1964). In order to be incident to an arrest, it is only necessary that the search be substantially contemporaneous with the arrest. See *Stoner* v. *California,* 376 U.S. 483, 84 S. Ct. 889, 11 L. Ed. 2d 856 (1964). This does not mean that the arrest cannot precede the search. Nor does it mean that the search is necessarily restricted to the boundaries of the premises where the arrest is made. The time and space intervals must not be so unreasonable as to render the search remote. Applying that criterion to the case before us, we find that there was evidence that the officers commenced the search as soon as appellant was placed under arrest. A search incident to a lawful arrest could scarcely be less remote in time than this. The most remote point of the search was conducted within 70 yards from the point of arrest. The search took place on premises on which appellant was arrested or immediately adjacent to the point on a public road on which he was arrested. We find no declaration by the Supreme Court of the United States that a search not within the precise boundaries of the premises on which an accused was arrested is unreasonable. Where, as here, the search is in the immediate vicinity of the place of arrest and movements of the arrested person in that vicinity had been observed, we find that it was reasonable. See *Stoner* v. *California,* supra. We do not consider the fact that the arrest was made in the public road bordering the premises searched, standing alone, would make the search remote in space. Actually, the road, or a substantial part thereof, could be said to constitute a part of the property of the abutting owner on whose premises the search was made. *McLain* v. *Keel,* 135

Ark. 496, 205 S.W. 894; *McGee* v. *Swearengen,* 194 Ark. 735, 109 S.W. 2d 444; *Wilkerson* v. *Gerard,* 200 Ark. 125, 138 S.W. 2d 76.

The legitimate objects of a search incidental to an arrest include fruits of the crime [*Agnello* v. *United States,* 269 U.S. 20, 46 S. Ct. 4, 70 L. Ed. 145 (1925); *Preston* v. *United States,* 376 U.S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777 (1964)] and evidentiary material. *Warden* v. *Hayden,* 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967). Cases such as *Cooper* v. *California,* 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967) which seem to limit some warrantless searches for evidence to situations where necessary to prevent destruction of evidence are not applicable to searches contemporaneous with an arrest. In that case, the search was conducted a week after the arrest. It was admitted that it was not incidental to the arrest. Cases involving searches preceding and used as justification for an arrest in "stop and frisk" cases such as *Sibron* v. *New York,* 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968) are also inapplicable.

### 5.

The cardboard box bearing the name and address of the burglarized paint store was introduced as an exhibit over appellant's objection and his motion to suppress was denied. This was an "open field" search and not unreasonable. *Hester* v. *United States,* 265 U.S. 57, 44 S. Ct. 445, 68 L. Ed. 898 (1926); *McDowell* v. *United States,* 383 F. 2d 599 (8th Cir. 1967).

### 6.

We do not understand appellant's arguments here. If the state had sought to introduce evidence of in-custody statements resulting from interrogation or if it were contended that he was denied counsel at a critical stage in his prosecution by state action, then we might

have some basis for inquiry as to the denial of constitutional rights. Since no such questions are involved, we find no merit in this contention.

### 7.

The court's instruction on this point read as follows:

"A fact in dispute may be proved by circumstantial evidence as well as by direct evidence. A fact is established by direct evidence when, for example, it is proved by witnesses who testify to what they saw, heard, or experienced. A fact is established by circumstantial evidence when its existence can reasonably be inferred from other facts proved in the case. Any fact in the case, and any element of the crimes charged may be proved by either kind or both kinds of evidence."

Appellant's objection was that the instruction should not have been given because there was no direct evidence to connect him with the crime. We found a substantially similar instruction invulnerable to that objection in *Duckett* v. *State,* 175 Ark. 1169, 299 S.W. 1004.

### 8.

Appellant does not object to this instruction as incorrect. He only objects to it as being inapplicable and abstract, contending that there was no evidence to show that Louis Ray Jones was ever in possession of the stolen property. We find this objection well taken in the absence of evidence that the stolen property was or had been in appellant's possession, or other direct evidence connecting him with the crime.

We think it is proper that the case be remanded for a new trial, as was done in *France* v. *State,* supra.

BYRD, J. concurs.

HARRIS, C.J., dissents.

CONLEY BYRD, Justice.  I concur in the result reached but I am also of the opinion that the search was not incident to a lawful arrest within the reasons given by the U. S. Supreme Court for allowing the exception to the Fourth Amendment requirement of a search warrant.

The record shows that the Texarkana Police, under the direction of Chief Max Tackett, called the sheriff's office of Sevier County with a request for a search warrant.  While they were waiting for the search warrant, appellant, his brother and his girl friend drove up to the grandfather's house place in a Volkswagon.  The brother began to work on his mother's car.  Appellant and the girl friend got on a tractor, drove across the field near Chief Tackett's car, came back, parked the tractor behind the barn, and were in the process of leaving in the Volkswagon when Deputy Sheriff Young of Sevier County arrived with the search warrant.  Acting upon directions from Chief Tackett, the deputy sheriff arrested appellant and his girl friend at a point on the gravel road some twenty-five to forty feet from the garage and about sixty to seventy yards from the barn.  The officers then arrested the brother and made a complete search of the garage and barn where they found the paint and other related articles.

Based upon *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961), and the exclusionary rule adopted thereunder, appellant moved to suppress the evidence obtained by the search on the ground that the search warrant was illegally issued.  The trial court, finding that the warrant was issued by the clerk instead of a magistrate, held that the search warrant was invalid, but permitted the evidence obtained from the search to be introduced on the theory that it was a valid search incident to a lawful arrest.

The State, to support the action of the trial court, cites as authority an annotation in 19 A.L.R. 3rd at pages

805 and 807 wherein several states have permitted a search as an incident to a lawful arrest so long as the search of premises was in the "immediate presence," "immediate control," or "immediate surroundings" of the person arrested. However, because the Fourth Amendment of the U. S. Constitution has been made applicable to the States by *Mapp* v. *Ohio,* I believe we should look to the interpretation given the Fourth Amendment by the U. S. Supreme Court, rather than rely upon interprepations given by the several States to their own Constitutional provisions.

The Fourth Amendment only prohibits "unreasonable searches and seizures." In applying its exclusionary rule, the United States Supreme Court has consistently recognized a search incident to a lawful arrest as being reasonable.

In *Preston* v. *United States,* 376 U.S. 364, 367, 84 S. Ct. 881, 11 L. Ed. 2d 777 (1964), Mr. Justice Black stated:

> "... Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. *Weeks* v. *United States,* 232 U.S. 383, 392 (1914); *Agnello* v. *United States,* 269 U.S. 20, 30 (1925); This right to search and seize without a search warrant extends to things under the accused's immediate control, *Carroll* v. *United States,* supra, 267 U.S., at 158, and, to an extent depending on the circumstances of the case, to the place where he is arrested, *Agnello* v. *United States,* supra, 269 U.S., at 30; *Marron* v. *United States,* 275 U.S., 192, 199 (1927); *United States* v. *Rabinowitz,* 339 U.S. 56, 61-62 (1950). The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault

an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime —things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest..."

In *Agnello* v. *United States*, 269 U.S. 20, 46 S. Ct. 4, 70 L. Ed. 145 (1925), the facts showed that Agnello was arrested a block or two from his residence. In holding the search unlawful and not incidental to a lawful arrest, the court said: "While the question has never been directly decided by this court, it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest therein."

A reading of the decisions of the United States Supreme Court shows that a search as an incident to a lawful arrest, without a warrant, has been approved only (1) where the arrest was made within the premises, *Ker* v. *California*, 374 U.S. 23, 34, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963); *Stoner* v. *California;* 376 U.S. 483, 486, 84 S. Ct. 889, 11 L. Ed. 2d 856 (1964); (2) where the search was necessary to seize weapons or other things which might be used to assault the officers, *Sibron* v. *New York,* 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968); or (3) where the search was necessary to prevent the destruction of evidence, *Cooper* v. *California,* 386 U.S. 58, 59, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967).

Here, (1) the arrest was not made within the barn or the garage, and (2) there is no showing that the same was necessary to prevent an injury to the officers or an escape of the person arrested, or (3) to prevent the destruction of evidence. Therefore I am of the opinion that the search was not incidental to a lawful arrest.