TALMADGE G. HENLEY *v.* STATE OF ARKANSAS

CR 73-137                               503 S.W. 2d 478

Opinion delivered January 14, 1974

[Rehearing denied February 19, 1974.]

*Louis W. Rosteck,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Dep. Atty. Gen., for appellee

LYLE BROWN, Justice. This appeal comes from a second degree murder conviction. The appellant challenges the sufficiency of the circumstantial evidence to support the conviction and secondly, it is contended that the evidence "clearly shows that defendant was suffering from some mental disorder at the time the crime was committed".

We agree that the evidence was circumstantial but we think it was sufficient to sustain the conviction. We shall briefly relate the evidence in the light most favorable to the State. (The defense produced no evidence.) Sometime during the night of June 16, 1972, appellant's wife suffered death by extreme violence. She was found lying by the side of her wheel chair with bruises and contusions all over her body and with broken ribs on both sides. The medical examiner concluded that death resulted from "blunt force injury to the chest and abdomen". The couple lived alone in an apartment. Appellant gave a statement which was introduced by the State without objection. He stated that about 7:00 p.m. on the night in question he took two sleeping pills and went to bed leaving his wife sitting in her wheel chair watching television; that about 5:00 a.m. he discovered his wife lying beside the wheel chair with the television buzzing; and that he called the police.

The landlady lived in an apartment adjacent to the Henley apartment. She testified that at about five o'clock in the afternoon of June 16 she heard an unusual noise coming from the Henley apartment, "three loud thumps". Mrs. Ruth Lucky said she had a call from Mrs. Henley on the telephone at 5:00 p.m. on the 16th. (The jury could have reasonably concluded that the call was one of distress.) Dewayne Lucky said he went to the Henley apartment around six o'clock on the evening of June 16 (evidently in response to the call); that he knocked and received no reply; that he called to the Henleys but received no answer; that he could open the door about two inches and "it felt like something was against the door". The coroner testified he went to the apartment around 7:00 a.m. on June 17. He estimated the time of death to have been from three to twenty-four hours. He found no signs of struggle in the apartment. An assistant medical examiner performed an autopsy at 9:30 a.m. on June 17. He

opined that the victim had been dead from six to eighteen hours prior to the autopsy.

Officer David Isom testified he arrived at the apartment at 5:10 a.m. on the 17th in response to a telephone call, presumably from appellant; that appellant informed him that Mrs. Henley had fallen out of her wheel chair; that she often had blackouts and would come to herself within a few minutes; that the body was 90% bruised; and that appellant "had a wild look in his eyes, like he had been taking pills or something". The officer said the apartment appeared in an orderly condition.

Detective Joe Don Thomas participated in the investigation. He said the wheels on the victim's chair were locked; and that there was no evidence of a struggle or of forcible entry. "I saw the defendant at approximately 6:00 a.m. and talked to him again around noon.  . . . . He appeared abnormal; he wasn't remorseful—he was smiling. His speech was slurred, and he could have been under the influence of something. I did not find any alcoholic beverages or bottles. He told me he had taken two sleeping pills at 7:00 p.m.".

The State carries a heavy burden when circumstantial evidence alone is relied upon for conviction. The evidence "must exclude every other reasonable hypothesis than that of the guilt of the accused". *Jones* v. *State,* 246 Ark. 1057, 441 S.W. 2d 458 (1969). If the jury believed the State's evidence then this chain of circumstances was established: There was trouble in the Henley apartment around 5:00 p.m. when the landlady heard three loud thumps; Mrs. Henley made a distress call to her friend, Mrs. Lucky; in response to that call, Dewayne Lucky went to the apartment, arriving around six o'clock; he got no response and could not get in because the door was blocked from the inside; extensive investigation revealed no signs of breaking and entering; appellant was known to have been in the apartment from early in the evening until early the next morning; appellant's explanation of his wife falling because of a blackout was not plausible; it is hardly conceivable that the victim could have received the brutal beating she suffered without appellant being alarmed by it, assuming it was done by

someone other than appellant; it was impossible for the slaying to have been committed before appellant got home for the evening, because in that event he would have discovered the body when he came in. In other words, the proof points inescapably to the conclusion that appellant was in fact in the apartment when the crime was committed. Although the evidence is not as overwhelming as the State argues, we think the chain of circumstances is so connected as to exclude any cause of death other than it was suffered at the hands of appellant.

The other point for reversal is that appellant was suffering from a mental disorder and that the public defender who conducted the trial should have interposed the defense of insanity. We do not agree.

The defense of not guilty by reason of insanity was first advanced and appellant was sent to the State Hospital for observation. It was there found that appellant was probably without psychosis at the time of the offense. The public defender was furnished with an exhaustive record compiled on appellant at Ft. Roots Hospital, a veterans institution for nervous diseases. Those records were introduced at the hearing on motion for new trial. The conclusion of the Ft. Roots staff was that at no time during appellant's last admission (1970) did he show any evidence of psychotic behavior. The report also mentioned some facts uncomplimentary to past conduct. The public defender testified at the hearing on motion for new trial that, under the circumstances, it would not have been to appellant's best interest to plead insanity; that he fully explained the facts to appellant; and that appellant agreed the plea should be withdrawn. We refuse to overturn the case on the second point. In fact the public defender, with the consent of his client, made a tactical decision which was wholly within the bounds of propriety. *Johnson* v. *State,* 249 Ark. 208, 458 S.W. 2d 409 (1970); *Tollett* v. *Henderson,* 93 S. Ct. 1062, 36 L. Ed. 2d 235 (1973).

Affirmed.

HARRIS, C.J., not participating.