Joshua GARCIA *v.* STATE of Arkansas

97-765                                                    969 S.W.2d 591

Supreme Court of Arkansas
Opinion delivered April 30, 1998

*Young & Finley*, by: *Dale W. Finley*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. On February 20, 1997, an amended delinquency petition was filed in Pope County Chancery Court, Juvenile Division, charging appellant Joshua Garcia with carrying a knife as a weapon in violation of Ark. Code Ann. § 5-73-121 (Repl. 1993). He was fourteen at the time of the charged offense. After a hearing on the matter, the juvenile court entered an amended order and adjudged Garcia delinquent. The juvenile court concluded that Garcia carried the three-and-one-half-inch blade with the intent to use it as a weapon and placed him on six months' probation.

Garcia was initially charged with carrying a knife with the purpose to employ it as a weapon against a person in violation of Ark. Code Ann. § 5-73-120 (Supp. 1995), in addition to an unrelated third-degree battery charge. He pled guilty to the § 5-73-120 violation, but later was allowed to withdraw his plea. The unrelated battery charge was nolle prossed. On February 20, 1997, the State filed the amended petition charging Garcia under a separate statute, § 5-73-121, for having a knife three-and-one-half inches long for use with the purpose to employ the weapon against a person.[1]

---

[1] Section 5-73-121 only requires that the knife be carried as a weapon as opposed to possession with the use to employ the weapon against another person.

At the delinquency hearing for violation of § 5-73-121, Rudy Parks, the principal of Gardner Junior High School in Russellville, testified that on September 20, 1996, the school was having trouble with students spraying an undisclosed substance around the school building. He explained that Garcia was identified as carrying a spray can, and, as a result, he was brought to his office and searched. Parks testified that he found a large knife in the front pocket of his jeans. He also related to the court that Garcia told him he was going to give the knife to a friend. On cross-examination, the principal admitted that it "could have been possible" that the knife was recovered from Garcia's book bag. He further agreed that no one suggested that Garcia intended to use the knife to injure another student. Bryce Davenport, the school's resource officer and a member of the Russellville Police Department, next testified that the knife's blade measured three-and-one-half inches in length.

Garcia did not call any witnesses on his behalf, and his attorney moved for a dismissal of the charge, arguing that the State was required to prove that he carried the knife with the intent to use it as a weapon and that the State's evidence failed in this respect. The juvenile court found as follows:

> I'm basing my finding on the basis of a knife with a blade three and [one] half inches or longer in his possession and the statute makes that fact a prima facie case. And there is nothing to rebut that.

The amended order which was entered stated in part:

> The defendant is guilty of the offense as charged in that he had in his possession a knife having a blade three and one-half inches in length. Giving effect to the relevant statues (sic) it appears that the knife was carried with the intent to use it as a weapon against a person.

Garcia now claims on appeal that the juvenile court erred in not requiring proof of intent to possess the knife as a weapon. He points out that the amended delinquency petition asserted that he violated Ark. Code Ann. § 5-73-121 (Repl. 1993). Section 5-73-121 reads in relevant part:

(a) A person who carries a knife as a weapon, except when upon a journey or upon his own premises, shall be punished as provided by § 5-73-121(b).

(b) If a person carries a knife with a blade three and one-half inches (3½") long or longer, this fact shall be prima facie proof that the knife is carried as a weapon.

*Id.*

Violation of § 5-73-121 is punishable by a fine of not less than $50 nor more than $200 or by imprisonment in the county jail for not less than thirty days nor more than three months, or by both a fine and imprisonment. Ark. Code Ann. § 5-73-123(b) (Repl. 1993). Section 5-73-121, which has not been amended, was enacted in 1961 under the following title: "AN ACT to Prohibit Carrying a Knife as a Weapon and to Create a Presumption That a Person Carrying a Knife With a Blade Three and a Half Inches (3½") Long or Longer Is Carrying It as a Weapon." 1961 Ark. Acts 457.

Since its enactment, this court has had few occasions to discuss the application of § 5-73-121. In *Rowland v. State*, 255 Ark. 215, 499 S.W.2d 623 (1973), we recognized that conduct falling under the former § 5-73-121 was a separate crime from conduct proscribed under the former § 5-73-120. In *Smith v. State*, 241 Ark. 958, 411 S.W.2d 510 (1967), we affirmed the revocation of a suspended sentence based on conduct which violated the former § 5-73-121. In *Smith,* the appellant was found near midnight running down the road with a knife which had a ten-inch blade.

A sister statute, although it constitutes a separate offense, is § 5-73-120. That is the statute under which Garcia was first charged. It reads in part:

A person commits the offense of carrying a weapon if he possesses a handgun, knife, or club on or about his person, in a vehicle occupied by him, or otherwise readily available for use with a purpose to employ it as a weapon against a person.

Ark. Code Ann. § 5-73-120(a) (Supp. 1995). The term "knife" includes "any bladed instrument that is capable of inflicting serious physical injury or death by cutting or stabbing." Ark. Code Ann.

§ 5-73-120(b)(2). Violation of this section constitutes a Class A misdemeanor, which is punishable, under most circumstances, by a term of imprisonment not exceeding one year, or by a fine not exceeding $1,000, or by both imprisonment and a fine. Ark. Code Ann. § 5-73-120(d)(2); Ark. Code Ann. § 5-4-104(d) (Repl. 1993); Ark. Code Ann. § 5-4-201(b)(1) (Repl. 1993); Ark. Code Ann. § 5-4-401(b)(1) (Repl. 1993). Section 5-73-120 was enacted in 1975. Neither party argues that § 5-73-121 has, in any way, been implicitly repealed by the enactment of the later statute, § 5-73-120.

In *Nesdahl v. State*, 319 Ark. 277, 890 S.W.2d 596 (1995), a juvenile was convicted under § 5-73-120 for possessing a knife with a five-inch, double-edged blade that was found in a sheath in the small of his back. On appeal, he argued that the evidence was insufficient to support the judgment and attempted to make the argument that the trial court improperly relied on the *prima facie* element of the separate statute, § 5-73-121, to reach the result. We declined to reach that specific point because we held that the trial court did not err in concluding under the evidence presented that Nesdahl carried the knife for the purpose of employing it against another person.

In sum, the primary differences between § 5-73-120 and § 5-73-121 are (1) § 5-73-121 contains no specific element of purpose to use the knife as a weapon against another person; (2) § 5-73-121 carries a three-month maximum term in jail as compared to one year for violation of § 5-73-120; and (3) § 5-73-121 includes a presumption of guilt if the knife's blade is three-and-one-half inches.

In reviewing a juvenile criminal case, this court looks at the record in the light most favorable to the State and sustains the conviction if there is any substantial evidence to support it. *Nesdahl v. State, supra*; *Graham v. State*, 314 Ark. 152, 861 S.W.2d 299 (1993). In this case, the evidence supporting the conviction was the unrefuted evidence that Garcia was found in possession of a knife with a three-and-one-half-inch blade at junior high school. The juvenile court based its finding on the fact that Garcia was

carrying such a knife and noted that there was nothing to rebut the presumption.

██ Garcia's primary contention on appeal is that the presumption set out in § 5-73-121 impermissibly shifts the burden of proof to Garcia and violates his due process rights as a result. This court, in the past, has had occasion to discuss the constitutionality of presumptions, particularly with respect to the possession of controlled substances in various amounts and the resulting presumed intent to deliver those substances to third parties. This was the case in *Stone v. State*, 254 Ark. 1011, 498 S.W.2d 634 (1973), where we upheld a statutory presumption in connection with possession of heroin and established the following rule:

> The general principle is well recognized that even in criminal prosecutions, Congress or a state Legislature may with certain limitations enact that when certain facts have been proved they shall be prima facie evidence of the existence of the main fact in question. . . . The limitations are these: There must be some rational connection between the fact proved and the ultimate fact presumed; the inference of the existence of the ultimate fact from proof of the other fact must not be so unreasonable or unnatural as to be a purely arbitrary mandate; and the accused must not be deprived of a proper opportunity to present his defense to the main fact so presumed and have the case submitted upon all the evidence to the jury for its decision.

*Stone*, 254 Ark. at 1020-21, 498 S.W.2d at 639-40, *quoting O'Neill v. United States*, 19 F.2d 322, 327 (8th Cir. 1927). *See also Hooper v. State*, 257 Ark. 103, 514 S.W.2d 394 (1974) (affirming convictions for possession of one-half pound of marijuana with the intent to deliver when the state proved only possession in excess of the statutory presumption).

██ This court's precedent as evidenced in *Stone v. State, supra*, appears consistent with that of the United States Supreme Court. For example, in *Ulster County Court v. Allen*, 442 U.S. 140 (1979), the Court considered a challenge to the constitutionality of a New York statute that provided, with certain exceptions, that the presence of a firearm in an automobile is presumptive evidence of its illegal possession by all people inside the vehicle. In uphold-

ing the presumption on the facts of that case, the Court discussed the limits of presumptions in criminal cases:

> The most common evidentiary device is the entirely permissive inference or presumption which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. *See, e.g., Barnes v. United States,* [412 U.S. 837,] 840 n.3. In that situation the basic fact may constitute prima facie evidence of the elemental fact. See, *e.g., Turner v. United States,* 396 U.S. 398, 402 n.2. When reviewing this type of device, the Court has required the party challenging it to demonstrate its invalidity as applied to him. *E.g., Barnes v. United States, supra,* at 845; *Turner v. United States, supra,* at 419-424. See also *United States v. Gainey,* 380 U.S. 63, 67-68, 69-70 (1965). Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational fact-finder to make an erroneous factual determination.

*Ulster County Court,* 442 U.S. at 157.

■   The threshold inquiry, accordingly, is whether the presumption in § 5-73-121 is mandatory or permissive. The Court has explained:

> A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

*Francis v. Franklin,* 471 U.S. 307, 314 (1985) (citations omitted). If the presumption is permissive, it usually will not be viewed as relieving the State's burden of persuasion to prove all elements of the crime beyond a reasonable doubt. *Id.* A permissive inference will violate due process only if the suggested conclusion is one that reason and common sense will not justify in the light of the proven facts before the jury. *Id.; Ulster County Court v. Allen,*

*supra.* As long as the presumption is permissive, and there is a "rational connection" between the fact proved and the fact presumed, there is no merit to the accused's contention that the burden of coming forward was impermissibly shifted to him. *See, e.g., Barnes v. United States*, 412 U.S. 837, 846 n.11 (1973), *citing Leary v. United States*, 395 U.S. 6 (1969); *Tot v. United States*, 319 U.S. 463 (1943).

In this case, the juvenile court was the fact finder and the State was only required to prove under § 5-73-121 that Garcia carried the knife as a weapon. The State was not required to prove that he carried it with the specific purpose of using it as a weapon against another person, which is the statutory element under § 5-73-120, even though the amended delinquency petition and the juvenile court's order use that terminology. Whether there is a rational connection between Garcia's carrying a knife with a three-and-one-half-inch blade to school and the intent to carry it as a weapon is the crucial issue at hand.

We conclude that there is such a connection and that the juvenile court did not err in its finding of delinquency. Garcia had the presumptively violative knife at junior high school during school hours. Viewing the proof in the light most favorable to the State as we must, he was carrying the knife in the front pocket of his pants. Why else would he be carrying an oversized knife at school under these circumstances than as a weapon? Though the principal told the court that Garcia told him he had the knife there to give to a friend, that fact alone does mean the knife was not carried to school as a weapon. Nor does the fact that he might have been merely showing the knife to others militate against its possession as a weapon.

Garcia himself did not make any claim to innocuous uses, and the trial court alluded to that fact in its ruling. We do not see how application of the presumption to Garcia under these facts violated his due process rights when the young man had to know that possession of a knife with a three-and-one-half-inch blade in a school environment was contrary to school rules, if not the law.

Affirmed.

Newbern, Glaze, and Imber, JJ., dissent.

David Newbern, Justice, dissenting. By Act 457 of 1961, the Arkansas General Assembly enacted the following law that is now codified as Ark. Code Ann. § 5-73-121 (Repl. 1997):

*Carrying a knife as a weapon.*

(a) A person who carries a knife as a weapon, except when upon a journey or upon his own premises, shall be punished as provided by § 5-73-123(b).

(b) If a person carries a knife with a blade three and one-half inches (3½") long or longer, this fact shall be prima facie proof that the knife is carried as a weapon.

(c) This section does not apply to officers whose duties include making arrests or keeping and guarding prisoners, nor to persons summoned by the officers to aid in the discharge of their duties while actually engaged in the discharge of their duties.

By Act 696 of 1975, the General Assembly enacted a comprehensive statute on the carrying of weapons, including knives, which, as amended, is now codified as Ark. Code Ann. § 5-73-120 (Repl. 1997). The later law covers fully the statements contained in subsections (a) and (c) of § 5-73-121 but does not include the language making the carrying of a knife with a blade of 3.5 inches or longer *prima facie* proof that the knife is carried as a weapon. The legislative oversight in failing to repeal the earlier statute has resulted in the retention in our law of a provision easily applied, as in this case, in violation of an accused's right to due process of law.

Joshua Garcia was shown to have "carried" a knife with a 3.5-inch blade to school. The principal testified that he believed Mr. Garcia had the knife in his right front pocket but acknowledged on cross-examination the possibility that the knife was found in a bookbag. The principal further testified that Mr. Garcia explained that he was going to give the knife to a friend. The principal conceded that there had been no suggestion that Mr. Garcia intended to use the knife to injure anyone or to use the knife as a weapon.

Nothing else was introduced by the State to show that Mr. Garcia carried the knife "as a weapon." The Chancellor, however, determined that this element of the offense, by operation of the *"prima facie* proof" language of § 5-73-121(b), had been proven, and Mr. Garcia was adjudicated delinquent as he had presented, in the words of the Chancellor, "nothing to rebut that."

The question that we must resolve is whether the Chancellor's reliance on the "presumption" found in § 5-73-121(b) comports with the Due Process Clause of the Fourteenth Amendment, which, as the United States Supreme Court has explicitly held, "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).

The use of a presumption in a criminal case may violate the Due Process Clause if it permits a conviction without requiring the factfinder to conclude that the State has proved each element of the offense beyond a reasonable doubt. *See Sandstrom v. Montana*, 442 U.S. 510 (1979); *Mullaney v. Wilbur*, 421 U.S. 684 (1975); *In re Winship, supra. See also Francis v. Franklin*, 471 U.S. 307, 313 (1985)(stating due process requires the State to bear the "burden of persuasion beyond a reasonable doubt of every essential element of a crime"); *Patterson v. New York*, 432 U.S. 197, 215 (1977) (stating that *Mullaney* "surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense"). *See generally* 1 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 77, at p. 367 (2d ed. 1994)(stating "that the prosecutor has the obligation to prove each element of the offense beyond a reasonable doubt" and "that the accused bears no proof burden whatsoever with respect to any element of the crime").

The Supreme Court has recognized the importance of inferences and presumptions in our "adversary system of factfinding" and has conceded that "[i]t is often necessary for the trier of fact

to determine the existence of an element of the crime — that is, an 'ultimate' or 'elemental' fact — from the existence of one or more 'evidentiary' or 'basic' facts." *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 156 (1979). The validity of such "evidentiary devices" under the Due Process Clause depends upon "the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder's freedom to assess the evidence independently." *Id.* The Court has stressed that "the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Id.*

Thus, the power of legislatures or courts "to declare that one fact may be inferred from another is subject to 'the basic requirement of Anglo-American law that no liability shall be imposed until the essential legal elements of that liability shall have been proved.'" 1 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE ¶303[02], at p. 303-11 (1996)(footnote omitted). *See also* MUELLER & KIRKPATRICK, *supra*, § 80, at p. 381 (stating "presumptions relating to elements of the charged offense create constitutional error if they are deployed against criminal defendants in conclusive terms or use language that has burden-shifting effect").

In the *Allen* case, the Court discussed the variety of presumptions that exist in the law and prescribed different rules for assessing their validity. *See also Sandstrom v. Montana,* 442 U.S. at 514 (stating that the "nature of the presumption" at issue determines the "constitutional analysis" to apply); 2 McCORMICK ON EVIDENCE § 346, at p. 481 (4th ed. 1992)("Under the *Allen* decision, these various kinds of presumptions differ not only procedurally, but also with regard to the tests for their constitutional permissibility as well.").

First, the Court recognized the "permissive inference or presumption," which, the Court said,

> allows — but does not require — the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and

which places no burden of any kind on the defendant. In that situation the basic fact may constitute prima facie evidence of the elemental fact.

*County Court of Ulster County, New York v. Allen*, 442 U.S. at 157. A "permissive" inference or presumption "leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof." *Id.* Therefore, the Court concluded, the use of such a presumption typically will not operate to relieve the State of its obligation, as recognized in the *Winship* case, to prove each element of the offense beyond a reasonable doubt.

The use of a permissive presumption will, however, violate due process if "there is no rational way the trier could make the connection permitted by the inference." *Id.* Thus, even with respect to permissive presumptions, there must be "a 'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed," and the presumed facts must follow "more likely than not" from the basic or evidentiary facts proved by the State. *Id.* at 165.

The second type of presumption that the Court discussed in the *Allen* case is the "mandatory presumption," which the Court described as "a far more troubling evidentiary device." *Id.* at 157. As the Court observed, a mandatory presumption "tells the trier of fact that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." *Id.* A more stringent test must be used in determining the validity of a mandatory presumption. "[U]nless the evidence necessary to invoke the inference is sufficient for a rational jury to find the inferred fact beyond a reasonable doubt," the use of a mandatory presumption violates the Due Process Clause. *Id.* at 166. The State "may not rest its case entirely" on a mandatory presumption "unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt." *Id.* at 167. *See also* MUELLER & KIRKPATRICK, *supra*, § 80, at p. 382 (stating that a mandatory presumption is valid "only if the basic facts make the presumed fact true beyond a reasonable doubt"); 1 WHARTON'S CRIMINAL EVIDENCE § 3:4, at p. 139 (15th ed. 1997).

Thus, a significant difference between permissive presumptions and mandatory presumptions concerns the applicable "standard[ ] of proof required to establish a rational connection" between the proven "basic facts" and the presumed "ultimate facts." WHARTON'S, *supra*, § 3:4, at p. 138. With respect to permissive presumptions, there is a "rational connection," and thus no constitutional infirmity, if the trier of fact could infer from the basic fact that it is "more likely than not" that the ultimate fact exists. With respect to mandatory presumptions, there is a "rational connection," and thus no constitutional infirmity, if the trier could infer from the basic fact that the ultimate fact exists "beyond a reasonable doubt."

The majority opinion in this case mentions the two kinds of presumptions, but it does not say whether the language in question is one or the other. The significance of the distinction may be lost in this case, however, as the majority misses an important caveat in the *Allen* opinion. The Supreme Court limited the applicability of the more lenient "more likely than not" standard to cases in which the permissive presumption "is not the sole and sufficient basis for a finding of guilt." *County Court of Ulster County, New York v. Allen*, 442 U.S. at 167. Thus, where a permissive presumption is the *only* evidence offered by the State to prove an essential element of the offense, the applicable standard is the "beyond a reasonable doubt" standard. In that situation, due process requires that the trier of fact be able to infer from the basic fact that the ultimate fact exists beyond a reasonable doubt. *See United States v. Allen,* 127 F.3d 260, 270 (2d Cir. 1997); *State v. Delmarter,* 845 P.2d 1340, 1349-50 (Wash.App. Div. 2 1993).

The majority recognizes that the sole basis recited by the Chancellor for his finding was the length of the blade and the lack of rebuttal. The majority seems to state its own factual finding or perhaps "rationale" as follows: "Viewing the proof in the light most favorable to the State as we must, he was carrying the knife in the front pocket of his pants. Why else would he be carrying an oversized knife at school under these circumstances than as a weapon?" Many answers suggest themselves immediately, *e.g.,* to whittle at recess or on the way home, to show the knife to a friend, to play mumbledypeg, to sharpen pencils, etc. Even if the Chancellor had recited those facts and the "why else" logic, it would have fallen far short of demonstrating that the "elemental"

fact is shown beyond a reasonable doubt by proof of the "basic" fact.

According to the decisions of the Supreme Court,

> . . . a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts.

*Tot v. United State*, 319 U.S. 463, 467–68 (1943). *See Leary v. United States,* 395 U.S. 6, 36 (1969)(stating "a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend"). "Common experience" fails to sustain such an inference in this case, and the majority opinion offers absolutely no assurance, let alone "substantial assurance," *Leary v. United States, supra,* that the two facts are "very probably connected." *United States v. Adams,* 293 F. Supp. 776, 782 (S.D.N.Y. 1968).

The only case in which § 5-73-121(b) has been recited as a basis for sustaining a conviction is *Smith v. State,* 241 Ark. 958, 411 S.W.2d 510 (1967). An officer observed Mr. Smith running from the scene of a burglary while carrying a ten-inch "corn knife or meat cleaver" in his hip pocket. That conviction could easily have been sustained under § 5-73-120, the more recent statute that requires the State to prove the accused possessed a knife "for use with a purpose to employ it as a weapon against a person." To allow the State to prove Joshua Garcia guilty of a criminal offense by evidence that he possessed a tool as common as a 3.5-inch knife is constitutionally intolerable.

I respectfully dissent.

GLAZE and IMBER, JJ., join in this dissent.