# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3383

_____

Christopher Stoner

*Plaintiff - Appellee*

v.

Eugene Watlingten, Individually and in his Official Capacity as Deputy Sheriff,
St. Francis County, Arkansas

*Defendant - Appellant*

Scott Melton; Bobby May; John Does; Tommy Watlingten; Christopher Reynolds

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Helena

_____

Submitted: September 24, 2013
Filed: November 7, 2013

_____

Before RILEY, Chief Judge, BRIGHT and BYE, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Christopher Stoner suffered arrest on suspicion of violating an Arkansas statute
that prohibited a person from possessing a weapon in a vehicle with a purpose to

employ the weapon against a person. *See* Ark. Code Ann. § 5-73-120(a) (2010) (amended 2013). After release from any charges, Stoner brought a civil rights action pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993 against five members of the St. Francis County Sheriff's Office, including Eugene Watlingten, the arresting officer. The defendants collectively moved for summary judgment of dismissal. The district court dismissed the claims against other defendants and, as relevant to this appeal, denied Watlingten's motion for summary judgment on Stoner's false arrest claim, concluding that Watlingten is not entitled to qualified immunity because there is a genuine issue of material fact as to whether he had probable cause to arrest Stoner.[1] Having jurisdiction under the collateral order doctrine, *see Mettler v. Whitledge*, 165 F.3d 1197, 1202 (8th Cir. 1999), we affirm.

I.    **Background**

    A.    **Facts**[2]

On May 25, 2010, Stoner rode as a passenger in a car with Oklahoma license plates traveling on Interstate 40 in Arkansas. Stoner's wife was driving. In St. Francis County, Watlingten, a deputy sheriff, initiated a traffic stop. The legal basis for the stop is not at issue in this appeal.

After Stoner's wife pulled to the shoulder, Watlingten approached the car and asked Stoner and his wife to produce identification. They complied. Stoner informed Watlingten that he and his family were traveling through Arkansas and did not live

---

[1]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

[2]For an appeal of a district court's denial of qualified immunity, "we accept the district court's findings of fact taken in the light most favorable to [Stoner]." *Roberts v. City of Omaha*, 723 F.3d 966, 969 n.1 (8th Cir. 2013).

within the state. In response to Watlingten's questioning, Stoner explained that he was an ammunition salesman. Watlingten asked if any firearms or ammunition were inside the car. Stoner admitted that there was a 9-millimeter handgun, a .22 caliber pistol, and an AK-47 in the trunk, along with some ammunition. Watlingten asked Stoner to show him the firearms. Without objection, Stoner removed the firearms from a guitar case in the trunk and showed them to Watlingten.

Two factual disputes relevant to this appeal exist between the parties: first, whether the firearms were loaded at the time Stoner removed them from the trunk; and second, the location of the firearms in the trunk. Stoner admits that the clips for the firearms were loaded, but claims that the clips were stored separately from the firearms. In contrast, Watlingten claims that the AK-47 and the 9-millimeter handgun were loaded and that the AK-47 contained a round in its chamber. As to the location of the firearms in the trunk, Stoner testified that firearms were stored in a guitar case that was underneath much of his family's luggage and that he had to pull out the luggage in order to gain access to the case. However, Watlingten testified that the guitar case was "[s]itting on top of [Stoner's] luggage" in the trunk.

After Stoner removed the firearms from the guitar case, additional officers arrived at the scene. Watlingten subsequently arrested Stoner for violating Ark. Code Ann. § 5-73-120(a), which at the time of the arrest provided:

> A person commits the offense of carrying a weapon if he or she possesses a handgun, knife, or club on or about his or her person, in a vehicle occupied by him or her, or otherwise readily available for use with a purpose to employ the handgun, knife, or club as a weapon against a person.

Watlingten transported Stoner to the St. Francis County Jail and booked him at approximately 2:30 p.m. Stoner was released in less than four hours. After Stoner's

release, the deputy prosecuting attorney chose not to pursue the charges, reasoning that Stoner had a valid defense because he was on a journey at the time he was cited.[3]

## B.    Procedural History

Stoner brought this civil rights action pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101 to -108, against five members of the St. Francis County Sheriff's Office for (1) conducting an unlawful search and arrest, (2) using excessive force, (3) conspiring to deprive him of his constitutional rights, and (4) failing to train or formulate appropriate policies. The defendants moved for summary judgment asserting qualified immunity. Stoner conceded that the defendants were entitled to summary judgment on his excessive force and illegal search claims.

The district court granted summary judgment of dismissal as to all claims except Stoner's false arrest claim against Watlingten. On the false arrest claim, the district court denied summary judgment on the ground that a genuine issue of material fact existed as to whether Watlingten had probable cause to believe that Stoner possessed the firearms "with a purpose to employ [them] against another person" given that the parties disputed whether the firearms were loaded. Given this issue of fact, the district court also concluded that Watlingten was not entitled to summary judgment on the basis of qualified immunity.

Watlingten appeals the denial of summary judgment on the basis that he is entitled to qualified immunity on Stoner's false arrest claim.

---

[3]The statute under which Stoner was charged provides that "[i]t is a defense to a prosecution . . . that at the time of the act of carrying a weapon . . . [t]he person is carrying the weapon when upon a journey." Ark. Code Ann. § 5-73-120(c)(4) (2010).

## II.    DISCUSSION

### A.    Standard of Review

"Summary judgment is appropriate when the evidence viewed in the light most favorable to the nonmoving party presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Coates v. Powell*, 639 F.3d 471, 475 (8th Cir. 2011). We review "de novo a denial of summary judgment on grounds of qualified immunity." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013). For the purposes of our review, we "accept[] as true the facts that the district court specifically found were adequately supported" in addition to the facts that the district court likely assumed. *Lockridge v. Bd. of Trs. of the Univ. of Ark.*, 315 F.3d 1005, 1008 (8th Cir. 2003). The scope of our interlocutory review, however, is limited to the issue of qualified immunity, and we may not consider summary judgment on the merits of the case at this stage. *Mettler*, 165 F.3d at 1202; *see Collins v. Bellinghausen*, 153 F.3d 591, 595 (8th Cir. 1998).

### B.    Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In reviewing the district court's denial of summary judgment on the grounds of qualified immunity, we engage in a two-part inquiry. We may first determine whether the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 242 (2009) (holding *Saucier*'s two-step sequence is not mandatory). If so, we next consider whether that right was clearly established at the time of the misconduct. *Saucier*, 533 U.S. at 201.

As to the first inquiry, the district court concluded that there was a factual dispute as to whether Watlingten had probable cause to arrest Stoner. Because the parties dispute whether the firearms were loaded at the time they were removed from the trunk, the district court reasoned that a genuine issue of material fact remained "as to whether Watlingten had any reason to believe that Stoner possessed the weapons 'with a purpose to employ' them 'against another person,'" which the district court impliedly concluded was an essential element of Ark. Code Ann. § 5-73-120(a).

We agree with the district court that the facts, when taken in the light most favorable to Stoner, show that Watlingten violated Stoner's constitutional right by arresting him without probable cause. *See Saucier*, 533 U.S. at 201-02. "The Fourth Amendment includes the right to be free from arrest without probable cause." *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999). Probable cause is determined based upon "the objective facts available to the officers at the time of the arrest." *Sheets v. Butera*, 389 F.3d 772, 777 (8th Cir. 2004). It "exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense at the time of the arrest." *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000) (citation omitted) (internal quotation marks omitted). As we have observed, Stoner testified that the firearms were not loaded and were stored underneath his luggage at the bottom of the trunk. Assuming, as we must, that these facts are true, a prudent officer would not be justified in believing that Stoner possessed the firearms "with a purpose to employ [them] . . . against a person."[4] *See McGuire v. State*, 580 S.W.2d 198, 200 (Ark. 1979) ("There is a presumption that a *loaded* pistol is placed in a car as a weapon." (emphasis added)).

---

[4]Because we conclude that, viewing the facts in the light most favorable to Stoner, Watlingten's conduct violated a constitutional right for the reasons described above, we do not address whether Watlingten also lacked probable cause on the basis that Stoner was "on a journey" and therefore had a legal defense to prosecution under Ark. Code Ann. § 5-73-120(c)(4).

-6-

Next, we must consider whether Stoner's right to be free from arrest was clearly established at the time Watlingten arrested him. *See Saucier*, 533 U.S. at 201–02. "In determining whether the legal right at issue is clearly established, this circuit applies a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles." *J.H.H. v. O'Hara*, 878 F.2d 240, 243 (8th Cir. 1989) (citation omitted) (internal quotation marks omitted). We assess the objective reasonableness of the action "in light of clearly established law and the information the . . . officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (stating that an officer's "subjective beliefs" are irrelevant). Under these principles, we frame the clearly-established question as whether a reasonable officer would have known that he violated clearly established Fourth Amendment law by arresting Stoner for violating Ark. Code Ann. § 5-73-120(a). Based on the record, we answer in the affirmative.

"The Fourth Amendment right of citizens not to be arrested without probable cause is indeed clearly established." *Kuehl v. Burtis*, 173 F.3d 646, 649 (8th Cir. 1999). However, Watlingten argues that even if his conduct violated a constitutional right, he is nevertheless entitled to qualified immunity because Ark. Code Ann. § 5-73-120(a) did not put him on notice that his conduct was unlawful. Indeed, "[i]f the law did not put [Watlingten] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202.

For context, we repeat the specific language of Ark. Code Ann. § 5-73-120(a):

> A person commits the offense of carrying a weapon if he or she possesses a handgun, knife, or club on or about his or her person, in a vehicle occupied by him or her, or otherwise readily available for use with a purpose to employ the handgun, knife, or club as a weapon against a person.

Watlingten contends that the statutory language "with a purpose to employ the handgun, knife, or club as a weapon against a person" only applies to the third scenario addressed in the statute: situations in which the weapon is "otherwise readily available for use." Watlingten argues that a person violates Ark. Code Ann. § 5-73-120(a) when he or she possesses a qualifying weapon "on or about his or her person" or "in a vehicle occupied by him or her" without regard to that person's purpose for possessing the weapon.

In opposition, Stoner contends that in order to violate Ark. Code Ann. § 5-73-120(a), a person must have "a purpose to employ the handgun, knife, or club as a weapon against a person," regardless of whether the person possesses the weapon on his person, in a vehicle, or in such a manner that the weapon is readily available for use. These competing interpretations raise the question of whether Ark. Code Ann. § 5-73-120(a) is ambiguous such that Watlingten was not on notice of the conduct it prohibited.

On at least three occasions, the Arkansas Supreme Court has stated a person must have "a purpose to employ the handgun, knife, or club, as a weapon against a person" in order to violate Ark. Code Ann. § 5-73-120(a).[5] *See Garcia v. State*, 969 S.W.2d 591, 595 (Ark. 1998) (explaining that "the specific purpose of using [a handgun, knife, or club] as a weapon against another person" is a "statutory element under § 5-73-120"); *Nesdahl v. State*, 890 S.W.2d 596, 598 (Ark. 1995) (concluding that the evidence was sufficient to affirm a conviction under Ark. Code Ann. § 5-73-120(a) because the fact-finder could reasonably infer that the defendant "possessed the knife concealed on his person readily available for use *with a purpose to employ*

_____

[5]We have also observed that "[i]n Arkansas, a person commits the crime of 'carrying a weapon' if he possesses a handgun *with a purpose to employ the handgun against a person*." *United States v. Robinson*, 670 F.3d 874, 877 (8th Cir. 2012) (emphasis added).

*it against someone as a weapon*" (emphasis added)); *McGuire*, 580 S.W.2d at 200 (explaining that a prior version of the statute "makes it unlawful for a person to carry a weapon if he possesses a handgun in certain situations, *including* possession in a vehicle occupied by him, . . . with a purpose to employ it as a weapon against a person." (emphasis added) (internal quotation marks omitted)). Given this precedent, a reasonable officer would understand a violation of Ark. Code Ann. § 5-73-120(a) is predicated upon a person having "a purpose to employ the handgun, knife, or club as a weapon against a person."

## III. Conclusion

Viewing the facts in the light most favorable to Stoner, a fact-finder could determine that Watlingten (1) violated a constitutional right belonging to Stoner that was (2) clearly established at the time of the violation. Accordingly, the district court properly denied summary judgment of dismissal to appellant Watlingten on the false arrest claim. *See Greiner v. City of Champlin*, 27 F.3d 1346, 1352 (8th Cir. 1994) ("[I]f there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment."). Therefore, we affirm.

_____