# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1680

_____

Marvin Allen Mead

*Plaintiff - Appellee*

v.

Director Charles Palmer, Director of the Iowa Department of Human Services

*Defendant*

Jason Smith, Superintendent of CCUSO Unit Cherokee Mental Health Institute;
Mary Benson, Medical Nurse/Medical Tech of CCUSO Unit Cherokee Mental
Health Institute

*Defendants - Appellants*

Brad Wittrock, Director of Security Operations; Bob Stout, Religious Coordinator/Chaplin

*Defendant*s

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: April 16, 2015
Filed: July 24, 2015

_____

Before BYE and SMITH, Circuit Judges, and SCHILTZ[1], District Judge.

_____

SMITH, Circuit Judge.

In this interlocutory appeal, Director Jason Smith, M.D., and Nurse Mary Benson, both of Iowa's Civil Commitment Unit for Sex Offenders (CCUSO) (collectively, "defendants"),[2] appeal the district court's order denying them qualified immunity from damages in a 42 U.S.C. § 1983 suit brought by Marvin Mead, a patient civilly committed at the CCUSO. Mead claimed that he was denied essential dental care because the defendants required him to pay for partial dentures and were deliberately indifferent to his serious medical need by denying him the dentures.

After careful review of the record—and within the constraints of our appellate jurisdiction in this interlocutory appeal—we conclude that the defendants are entitled to qualified immunity from damages on Mead's claim regarding the denial of partial dentures. *See Stoner v. Watlingten*, 735 F.3d 799, 802 (8th Cir. 2013) (de novo review); *Robbins v. Becker*, 715 F.3d 691, 693 (8th Cir. 2013) (court has jurisdiction to review denial of qualified immunity only to extent that denial turns on issue of law). Accordingly, we reverse.

I. *Background*

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota, sitting by designation.

[2]Those defendants who are named in the caption, but are not designated as appellants with Dr. Smith and Benson, were either dismissed for lack of personal involvement or are named in a separate complaint consolidated with the complaint that is the subject of this appeal.

Mead's amended § 1983 complaint alleged that the defendants "denied [him] adequate dental care" by depriving him of "extensive dental care that he is unable to afford" and were "deliberately indifferent to [his] need for dental care in violation of his constitutional rights." He alleged that he had many teeth pulled while in custody, was unable to chew food properly, suffered from acid reflux, and had become diabetic. He sought injunctive relief and damages.

The defendants moved for summary judgment arguing that Mead had sufficient funds to pay for a partial denture plate and failed to demonstrate a serious medical need because (1) he had not requested and did not want a soft diet, (2) he had not lost weight, (3) he had complained of discomfort but not pain, (4) he had stated that he was satisfied with his medical care, and (5) no dentist had concluded that Mead had a serious medical need for dentures. The defendants argued that they were entitled to qualified immunity, not personally responsible for Mead's alleged damages, and immune from money damages. In an attached statement of facts, they alleged that Mead had $1,300 in his account and that buying a partial plate would cost approximately $1,200. The defendants' appendix included transcripts of the depositions of Mead and dentist Timothy DeStigter; Mead's dental records; and CCUSO documents, including Mead's account statement, nursing notes, and a health-services request from Mead.

The undisputed evidence shows the following. Mead testified that he suffered cuts on the top of his gums from chewing food which caused "discomfort" but "not really pain." Mead could not eat apples, eating steak was a "chore" for him, and eating cold cereal cut his gums. He was on a normal diet and did not want a soft diet. He had gained about ten pounds since admission to CCUSO, and he felt that he consumed adequate calories. He ate "in a different way" and had to "adapt" how he chewed. He was satisfied with his medical care.

Dr. Timothy DeStigter, Mead's treating dentist, testified that substantial recent weight loss is symptomatic of serious medical need for dentures. According to Dr. DeStigter, if he had seen cuts on Mead's gums or had believed that Mead had a serious medical need for dentures, he would have made that notation in Mead's file; his records did not include either notation. Nursing notes indicate that Mead had been transported to Dr. DeStigter's office for a dental appointment in January 2012 after complaining of a broken tooth. During the appointment, Mead asked if he was a candidate for an upper partial plate, and Dr. DeStigter replied that Mead would need to have another couple of teeth pulled, and then Dr. DeStigter "would recommend Pt. Mead be fitted for an upper partial plate." Following this appointment, Mead wrote in a health-services request that he needed a partial plate so that he could chew his food properly. Benson responded that "we do not pay for dentures" and directed Mead to take the issue to management. In September 2012, Mead had another dental appointment, during which two teeth were pulled.

In response to the defendants's summary-judgment motion, Mead argued that he required partial dentures to repair damage to his teeth that occurred while he was detained; without the dentures, he suffered discomfort and cuts on his gums; and though he had saved $1,300 in a "restricted" account that could be used for medical care, there was a $2,000 saving requirement for progressing towards release from CCUSO. Mead also argued that he had to be selective about his diet due to his diabetes, acid reflux, Hepatitis C, and high cholesterol and that the lack of teeth limited food choice. The defendants replied, as relevant, that the new policy required "demonstration of financial responsibility" and no longer required a specific amount of savings.

The district court denied summary judgment, concluding that Mead had established a genuine issue of material fact on whether he had a serious medical need for dentures in light of (1) his medical condition and inability to choose freely what to eat and (2) the fact that his weight gain might be unhealthy rather than a sign of

good health. The court also found that Mead had established a genuine issue on whether the defendants were deliberately indifferent by refusing him partial dentures. The court then concluded that the defendants were not entitled to qualified immunity because they had admitted that they knew of their obligation to provide medical care that was not deliberately indifferent. The court found that Dr. Smith and Benson were appropriate defendants because Dr. Smith had developed the denture policy and Benson had carried it out; according to the court, because they were being sued in their individual capacities, they were not immune from money damages.

## II. *Discussion*

On appeal, the defendants argue that they are entitled to qualified immunity because Mead neither demonstrated serious medical need nor deliberate indifference.

"We review de novo a denial of summary judgment on grounds of qualified immunity." *Stoner*, 735 F.3d at 802 (quotation and citation omitted). We note that "[t]he scope of our interlocutory review, however, is limited to the issue of qualified immunity, and we may not consider summary judgment on the merits of the case at this stage." *Id*. (citations omitted). "We may review a district court's order denying qualified immunity to the extent that it turns on an issue of law." *Robbins*, 715 F.3d at 693 (8th Cir. 2013) (quotations and citations omitted).

In determining whether the defendants should receive qualified immunity, this court evaluates

> (1) whether the facts alleged, construed in the light most favorable to [Mead], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful.

*Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). We may "exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 236.

"[W]here a [civilly-committed] patient's Fourteenth Amendment claim is for constitutionally deficient medical care, we apply the deliberate indifference standard from the Eighth Amendment." *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014) (citing *Senty–Haugen v. Goodno*, 462 F.3d 876, 889–90 (8th Cir. 2006)); *see also Curtiss v. Benson*, 583 F. App'x 598 (8th Cir. 2014) (per curiam) (same). To prove deliberate indifference, Mead must show that (1) he suffered from objectively serious medical needs, and (2) the defendants actually knew of, but deliberately disregarded, those needs. *See Fourte v. Faulkner Cnty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014).

This court recently decided a substantially similar case involving the CCUSO and defendant Benson. *See Curtiss*, 583 F. App'x at 598. In that case, a civilly-committed patient "who has had *no teeth* since shortly after his 2008 admission to CCUSO" filed suit against Benson and another nurse practitioner, "claim[ing] that he was denied dentures in violation of his rights under the Fourteenth Amendment." *Id*. (emphasis added) (citation omitted). The district court denied qualified immunity to the nurse practitioners. *Id*. On appeal, we reversed, holding that the nurse practitioners were "entitled to qualified immunity as to [the civilly-committed patient's] claim for damages based on the denial of dentures." *Id*. We found "no genuine issue of material fact on the question whether [the patient] can show a violation of his clearly established constitutional rights, that is, that the defendants were deliberately indifferent to a serious medical need" because no evidence existed in the record

> suggesting that either defendant knew and ignored that Curtiss *was in pain, much less severe pain*, as a result of his lack of teeth. There also

is nothing in the record to suggest that either defendant had information from which she would have drawn the conclusion that because Curtiss had difficulty chewing certain foods without teeth, he was *unable to obtain adequate nutrition*, and Curtiss did not make this claim.

*Id*. at 598–99 (emphases added). As a result, we held that "a reasonable medical professional in the position of [the nurse practitioners] would not have known that denying [the civilly-committed patient's] request to be provided dentures would violate his clearly established constitutional rights." *Id*. at 599 (citing *Tolan v. Cotton*,__ U.S.__, 134 S. Ct. 1861, 1866 (2014) (per curiam) (explaining that the "salient question" when determining whether rights are clearly established is whether the law at the time of the challenged conduct provided "fair warning" that the conduct was unconstitutional (quotation and citation omitted)); *Stoner*, 735 F.3d at 803 ("In determining whether the legal right at issue is clearly established, this circuit applies a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles." (quotation and citation omitted)); *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007) (collecting cases reversing summary judgment for prison officials when those officials delayed providing dental care for inmates who showed signs of serious infection and who complained of severe pain)).

We see no discernable difference between this case and *Curtiss* and therefore hold that the defendants are entitled to qualified immunity. Similar to *Curtiss*, the *undisputed* facts show that (1) Mead had received regular dental examinations, and dentures had never been prescribed as medically necessary; (2) he had gained weight and received sufficient calories; (3) his discomfort did not rise to the level of pain; (4) he was still able to eat; and (5) he did not want a soft diet, even though chewing certain foods was a "chore," because he had learned to adapt. Mead's deposition testimony reveals that his primary complaint is that he receives cuts on the tops of his gums from chewing his food. He testified that these cuts cause discomfort: "You know what, discomfort. Not really pain, but discomfort. You know it's there. It's not

like it's a big pain or anything, but it's uncomfortable." He testified he has trouble eating apples and that eating steak was a "chore." He also noted that eating cold cereal like Captain Crunch is a problem. He is on a normal diet and has not requested a soft diet that would be easier on his gums. He stated, "I have seen those diets. I really don't want none of that." Mead weighed 220 pounds upon admission, and he now weighs about 230—a modest weight gain. Mead agreed that he has not lost weight due to difficulty chewing, testifying, "[Y]ou know, I'm still adamant about my food. I still love to eat. I just do it in a different way now. You know, you adapt to what you're working with, and I've been able to do that. Q: Do you feel like you're able to get adequate calories? A: Yeah." Mead also had a physical in October 2012, and he did not complain about problems with his mouth at the physical. Given these undisputed facts, we hold that Mead failed to prove that the defendants were deliberately indifferent to a serious medical need; as a result, the defendants are entitled to qualified immunity.

"We note that the doctrine of qualified immunity does not apply to [Mead's] claim[] for . . . injunctive relief." *Curtiss*, 583 F. App'x at 599 (citing *Burnham v. Ianni*, 119 F.3d 668, 673 n.7 (8th Cir. 1997) (en banc) (explaining that an appeal from the denial of qualified immunity implicated only liability for money damages and that qualified immunity would not protect the defendant from claims for injunctive or other equitable relief); *Grantham v. Trickey*, 21 F.3d 289, 295 (8th Cir. 1994) (stating that "qualified immunity does not apply to claims for equitable relief")).

### III. *Conclusion*

Accordingly, we reverse the district court's decision denying the defendants qualified immunity from damages on the instant dental claim, and we remand the case for further proceedings consistent with this opinion.

BYE, Circuit Judge, dissenting.

I disagree this Court should exercise jurisdiction to reverse the district court and find Smith and Benson ("the officials") entitled to qualified immunity.

A denial of a summary judgment on the issue of qualified immunity is immediately appealable only to the "extent that it turns on an issue of law." Brown v. Fortner, 518 F.3d 552, 557 (8th Cir. 2008). This is not a case where we may resolve the question of qualified immunity as a matter of law. See Prosser v. Ross, 70 F.3d 1005 (8th Cir. 1995); Crow v. Montgomery, 403 F.3d 598, 604 (8th Cir. 2005) (Smith, J., dissenting).

The officials argue factual disputes on appeal, and the Court makes factual inferences in favor of the officials. The Court focuses on five undisputed facts which it believes require a finding that the officials were not deliberately indifferent to a serious medical need. These facts do not support this Court exercising jurisdiction and reversing the district court. For example, the Court finds relevant that Mead had gained weight. Although weight gain *could* support a finding the officials were not deliberately indifferent—because if Mead were gaining weight, then Mead was consuming sufficient calories—the weight gain could also support a finding the officials were deliberately indifferent. Mead not only has trouble chewing his food and suffered cuts, he also has diabetes, acid reflux, Hepatitis C, and high cholesterol. For these reasons, Mead's weight gain could easily be attributable to inadequate nutrition because the officials failed to provide Mead dentures. Similarly, the Court finds relevant Mead's statement he did not want a soft diet. Although this refusal *could* support a finding the officials were not deliberately indifferent—because any pain was insufficient to convince Mead to change his diet—Mead's interest in avoiding a soft diet could be related to his nutritional needs based on his other health issues.

-9-

I believe the district court was correct in its determination that material factual disputes exist regarding the officials' knowledge and conduct. Despite the officials arguing factual issues on appeal,[3] the Court finds jurisdiction exists and holds "Mead failed to prove that the defendants were deliberately indifferent to a serious medical need." For this proposition, the Court relies on Curtiss v. Benson, 583 F. App'x 598 (8th Cir. 2014) (per curiam).

The reliance on Curtiss is misplaced. In Curtiss, the Eighth Circuit found the defendants did not know the plaintiff was in any pain or unable to obtain adequate nutrition. Id. at 598-99. This case is different: Mead reported discomfort from chewing as well as associated problems, such as acid reflux and cuts to his gums. As discussed above, Mead has put forth evidence which could support a finding he was unable to obtain adequate nutrition and the officials were deliberately indifferent in failing to accommodate his nutritional needs as a diabetic by failing to provide him with dentures. The law is clearly established that officials can act with deliberate indifference to an inmate's serious medical need for dentures. See Campbell v. Dunham, No. 07-00567, 2010 WL 7361158 at *4-5 (S.D. Iowa Oct. 27, 2010) (surveying case law on dentures in deliberate indifference cases). Because it is

_____

[3]I have identified at least four factual disputes raised by the officials in their briefs. First, the parties contest whether Mead's lack of upper teeth had caused cuts to the gums. The officials acknowledge discomfort exists, but dispute whether there are any cuts. Second, the parties contest the reasonableness of requiring Mead to pay for his dentures. The officials argue no certain amount of savings are needed while Mead testified there was, at the time of his denture denial, a requirement of having $2000 in an account before release and he did not know if he would be punished under the new fiscal responsibility requirement. Third, the parties contest whether Mead has special dietary needs which would tend to support him needing dentures. The officials assert there is no medical evidence that Mead requires any particular type of special diet. Mead alleges he has special dietary needs because he has diabetes and Hepatitis C. Finally, the parties contest whether the officials were responsible for the denial of Mead's dentures. The officials argue they did not make the denture decision; Mead argues the officials created and enforced the denture rule.

clearly established dental needs may be recognized as a serious medical need in support of § 1983 deliberate indifference claims, <u>Boyd v. Knox</u>, 47 F.3d 966, 969 (8th Cir. 1995), and because factual disputes exist about the seriousness of Mead's dental needs and whether the officials were deliberately indifferent, I do not believe this Court can find, as a matter of law, Mead has failed to show deliberate indifference.

Accordingly, I would dismiss this case for lack of jurisdiction.

_____

-11-